CAREY ET AL. *v.* PIPHUS ET AL.

No. 76–1149. Argued December 6, 1977—Decided March 21, 1978

Powell, J., delivered the opinion of the Court, in which Burger, C. J., and Brennan, Stewart, White, Rehnquist, and Stevens, JJ., joined. Marshall, J., concurred in the result. Blackmun, J., took no part in the consideration or decision of the case.

*Earl B. Hoffenberg* argued the cause for petitioners. With him on the briefs was *Michael J. Murray.*

*John Elson* argued the cause for respondents. With him on the brief was *David Goldberger.**

Mr. Justice Powell delivered the opinion of the Court.

In this case, brought under 42 U. S. C. § 1983, we consider the elements and prerequisites for recovery of damages by students who were suspended from public elementary and secondary schools without procedural due process. The Court of Appeals for the Seventh Circuit held that the students are entitled to recover substantial nonpunitive damages even if their suspensions were justified, and even if they do not prove that any other actual injury was caused by the denial of procedural due process. We disagree, and hold that in the absence of proof of actual injury, the students are entitled to recover only nominal damages.

I

Respondent Jarius Piphus was a freshman at Chicago Vocational High School during the 1973–1974 school year. On January 23, 1974, during school hours, the school principal saw Piphus and another student standing outdoors on school property passing back and forth what the principal described as an irregularly shaped cigarette. The principal approached the students unnoticed and smelled what he believed was the

---

*Leon Fieldman* filed a brief for the National School Boards Assn. as *amicus curiae* urging reversal.

strong odor of burning marihuana. He also saw Piphus try to pass a packet of cigarette papers to the other student. When the students became aware of the principal's presence, they threw the cigarette into a nearby hedge.

The principal took the students to the school's disciplinary office and directed the assistant principal to impose the "usual" 20-day suspension for violation of the school rule against the use of drugs.[1] The students protested that they had not been smoking marihuana, but to no avail. Piphus was allowed to remain at school, although not in class, for the remainder of the school day while the assistant principal tried, without success, to reach his mother.

A suspension notice was sent to Piphus' mother, and a few days later two meetings were arranged among Piphus, his mother, his sister, school officials, and representatives from a legal aid clinic. The purpose of the meetings was not to determine whether Piphus had been smoking marihuana, but rather to explain the reasons for the suspension. Following an unfruitful exchange of views, Piphus and his mother, as guardian *ad litem,* filed suit against petitioners in Federal District Court under 42 U. S. C. § 1983 and its jurisdictional

---

[1] At the time of the suspensions, the Board of Education's general rule governing suspensions provided:

"For gross disobedience or misconduct a pupil may be suspended temporarily by the principal for a period not exceeding one school month for each offense. Each such suspension shall be reported immediately to the District Superintendent and also to the parent or guardian of the pupil, with a full statement of the reasons for such suspension. The District Superintendent shall have authority to review the action of the principal and to return the suspended pupil." Rule 6–9 of the Rules of the Board of Education of the city of Chicago (1973), quoted in District Court opinion, App. to Pet. for Cert. A9.

The District Court held that the terms "gross disobedience" and "misconduct" in this general rule are not unconstitutionally vague because they were narrowed by the school principals' issuance of the particular rules allegedly violated here. *Id.,* at A9–A10. Rule 6–9 was amended following this Court's decision in *Goss* v. *Lopez,* 419 U. S. 565 (1975). See App. to Pet. for Cert. A10–A11, n. 3.

counterpart, 28 U. S. C. § 1343, charging that Piphus had been suspended without due process of law in violation of the Fourteenth Amendment. The complaint sought declaratory and injunctive relief, together with actual and punitive damages in the amount of $3,000.[2]  Piphus was readmitted to school under a temporary restraining order after eight days of his suspension.

Respondent Silas Brisco was in the sixth grade at Clara Barton Elementary School in Chicago during the 1973–1974 school year.  On September 11, 1973, Brisco came to school wearing one small earring.  The previous school year the school principal had issued a rule against the wearing of earrings by male students because he believed that this practice denoted membership in certain street gangs and increased the likelihood that gang members would terrorize other students.  Brisco was reminded of this rule, but he refused to remove the earring, asserting that it was a symbol of black pride, not of gang membership.

The assistant principal talked to Brisco's mother, advising her that her son would be suspended for 20 days if he did not remove the earring.  Brisco's mother supported her son's position, and a 20-day suspension was imposed.  Brisco and his mother, as guardian *ad litem*, filed suit in Federal District Court under 42 U. S. C. § 1983 and 28 U. S. C. § 1343, charging that Brisco had been suspended without due process of law in violation of the Fourteenth Amendment.[3]  The complaint

---

[2] The complaint named as defendants, individually and in their official capacities, the principal of the school; the General Superintendent of Schools of the city of Chicago; and the members of the Board of Education of the city of Chicago.

[3] Also named as plaintiff in Brisco's suit was People United to Save Humanity (PUSH), a religious corporation organized under the laws of Illinois, the membership of which includes parents of children in the Chicago public schools.  The District Court held that PUSH had standing to maintain this suit, a ruling not challenged on appeal.

In addition to the procedural due process claim, Brisco's complaint

sought declaratory and injunctive relief, together with actual and punitive damages in the amount of $5,000.[4] Brisco was readmitted to school during the pendency of proceedings for a preliminary injunction after 17 days of his suspension.

Piphus' and Brisco's cases were consolidated for trial and submitted on stipulated records. The District Court held that both students had been suspended without procedural due process.[5] It also held that petitioners were not entitled to qualified immunity from damages under the second branch of *Wood* v. *Strickland,* 420 U. S. 308 (1975), because they "should have known that a lengthy suspension without any adjudicative hearing of any type" would violate procedural due process. App. to Pet. for Cert. A14.[6] Despite these holdings, the District Court declined to award damages because:

"Plaintiffs put no evidence in the record to quantify their

alleged that enforcement of the "no-earring" rule violated his right to freedom of expression under the First and Fourteenth Amendments. Neither court below passed on this claim, nor do we.

[4] The complaint named as defendants, individually and in their official capacities, the principal of the school; the General Superintendent of Schools of the city of Chicago; the members of the Board of Education of the city of Chicago; and the Illinois Superintendent of Public Instruction. The District Court granted the latter party's motion to dismiss.

[5] The District Court read *Goss* v. *Lopez, supra,* as requiring "more formal procedures" for suspensions of more than 10 days than for suspensions of less than 10 days, and it set forth a detailed list of procedural requirements. See App. to Pet. for Cert. A11–A12. Petitioners have not challenged either the holding that respondents were denied procedural due process, or the listing of rights that must be granted.

[6] Although respondents' suspensions occurred before *Goss* v. *Lopez* was decided, the District Court thought that petitioners should have been placed on notice that the suspensions violated procedural due process by *Linwood* v. *Board of Ed. of City of Peoria,* 463 F. 2d 763 (CA7), cert. denied, 409 U. S. 1027 (1972). Petitioners have not challenged this holding.

The District Court expressly held that petitioners did *not* lose their immunity under the first branch of *Wood* v. *Strickland, i. e.,* that they

damages, and the record is completely devoid of any evidence which could even form the basis of a speculative inference measuring the extent of their injuries. Plaintiffs' claims for damages therefore fail for complete lack of proof." *Ibid.*

The court also stated that the students were entitled to declaratory relief and to deletion of the suspensions from their school records, but for reasons that are not apparent the court failed to enter an order to that effect. Instead, it simply dismissed the complaints. No finding was made as to whether respondents would have been suspended if they had received procedural due process.

On respondents' appeal, the Court of Appeals reversed and remanded. 545 F. 2d 30 (1976). It first held that the District Court erred in not granting declaratory and injunctive relief. It also held that the District Court should have considered evidence submitted by respondents after judgment that tended to prove the pecuniary value of each day of school that they missed while suspended. The court said, however, that respondents would not be entitled to recover damages representing the value of missed school time if petitioners showed on remand "that there was just cause for the suspension[s] and that therefore [respondents] would have been suspended even if a proper hearing had been held." *Id.*, at 32.

Finally, the Court of Appeals held that even if the District Court found on remand that respondents' suspensions were justified, they would be entitled to recover substantial "nonpunitive" damages simply because they had been denied procedural due process. *Id.*, at 31. Relying on its earlier

---

did not act "with the malicious intention to cause a deprivation of constitutional rights or other injury to the student," 420 U. S., at 322:

"Here the record is barren of evidence suggesting that any of the defendants acted maliciously in enforcing disciplinary policies against the plaintiffs. Undoubtedly defendants believed that they were protecting the integrity of the educational process." App. to Pet. for Cert. A13.

decision in *Hostrop* v. *Board of Junior College Dist. No. 515,* 523 F. 2d 569 (CA7 1975), cert. denied, 425 U. S. 963 (1976), the court stated that such damages should be awarded "even if, as in the case at bar, there is no proof of individualized injury to the plaintiff, such as mental distress . . . ." 545 F. 2d, at 31. We granted certiorari to consider whether, in an action under § 1983 for the deprivation of procedural due process, a plaintiff must prove that he actually was injured by the deprivation before he may recover substantial "nonpunitive" damages. 430 U. S. 964 (1977).

## II

Title 42 U. S. C. § 1983, Rev. Stat. § 1979, derived from § 1 of the Civil Rights Act of 1871, 17 Stat. 13, provides:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

The legislative history of § 1983, elsewhere detailed, *e. g., Monroe* v. *Pape,* 365 U. S. 167, 172–183 (1961); *id.,* at 225–234 (Frankfurter, J., dissenting in part); *Mitchum* v. *Foster,* 407 U. S. 225, 238–242 (1972), demonstrates that it was intended to "[create] a species of tort liability" in favor of persons who are deprived of "rights, privileges, or immunities secured" to them by the Constitution. *Imbler* v. *Pachtman,* 424 U. S. 409, 417 (1976).

Petitioners contend that the elements and prerequisites for recovery of damages under this "species of tort liability" should parallel those for recovery of damages under the common law of torts. In particular, they urge that the purpose of an award of damages under § 1983 should be to compensate

persons for injuries that are caused by the deprivation of constitutional rights; and, further, that plaintiffs should be required to prove not only that their rights were violated, but also that injury was caused by the violation, in order to recover substantial damages. Unless respondents prove that they actually were injured by the deprivation of procedural due process, petitioners argue, they are entitled at most to nominal damages.

Respondents seem to make two different arguments in support of the holding below. First, they contend that substantial damages should be awarded under § 1983 for the deprivation of a constitutional right *whether or not* any injury was caused by the deprivation. This, they say, is appropriate both because constitutional rights are valuable in and of themselves, and because of the need to deter violations of constitutional rights. Respondents believe that this view reflects accurately that of the Congress that enacted § 1983. Second, respondents argue that even if the purpose of a § 1983 damages award is, as petitioners contend, primarily to compensate persons for injuries that are caused by the deprivation of constitutional rights, every deprivation of procedural due process may be *presumed* to cause some injury. This presumption, they say, should relieve them from the necessity of proving that injury actually was caused.

### A

Insofar as petitioners contend that the basic purpose of a § 1983 damages award should be to compensate persons for injuries caused by the deprivation of constitutional rights, they have the better of the argument. Rights, constitutional and otherwise, do not exist in a vacuum. Their purpose is to protect persons from injuries to particular interests, and their contours are shaped by the interests they protect.

Our legal system's concept of damages reflects this view of legal rights. "The cardinal principle of damages in Anglo-

American law is that of *compensation* for the injury caused to plaintiff by defendant's breach of duty." 2 F. Harper & F. James, Law of Torts § 25.1, p. 1299 (1956) (emphasis in original).[7] The Court implicitly has recognized the applicability of this principle to actions under § 1983 by stating that damages are available under that section for actions "found . . . to have been violative of . . . constitutional rights *and to have caused compensable injury* . . . ." *Wood* v. *Strickland,* 420 U. S., at 319 (emphasis supplied); see *Codd* v. *Velger,* 429 U. S. 624, 630–631 (1977) (BRENNAN, J., dissenting); *Adickes* v. *S. H. Kress & Co.,* 398 U. S. 144, 232 (1970) (BRENNAN, J., concurring and dissenting); see also *Bivens* v. *Six Unknown Fed. Narcotics Agents,* 403 U. S. 388, 397 (1971) (action for damages directly under Fourth Amendment); *id.,* at 408–409 (Harlan, J., concurring in judgment). The lower federal courts appear generally to agree that damages awards under § 1983 should be determined by the compensation principle.[8]

The Members of the Congress that enacted § 1983 did not address directly the question of damages, but the principle that damages are designed to compensate persons for injuries caused by the deprivation of rights hardly could have been foreign to the many lawyers in Congress in 1871.[9] Two other

---

[7] See also D. Dobbs, Law of Remedies § 3.1, pp. 135–138 (1973); C. McCormick, Law of Damages § 1 (1935); W. Prosser, Law of Torts § 2, p. 7 (4th ed. 1971).

[8] See, *e. g., United States ex rel. Tyrrell* v. *Speaker,* 535 F. 2d 823, 829–830, and n. 13 (CA3 1976); *United States ex rel. Larkins* v. *Oswald,* 510 F. 2d 583, 590 (CA2 1975); *Magnett* v. *Pelletier,* 488 F. 2d 33, 35 (CA1 1973); *Stolberg* v. *Members of Bd. of Trustees for State Colleges of Conn.,* 474 F. 2d 485, 488–489 (CA2 1973); *Donovan* v. *Reinbold,* 433 F. 2d 738, 743 (CA9 1970).

[9] See 1 F. Hilliard, Law of Torts, ch. 3, § 5 (3d ed. 1866); T. Sedgwick, Measure of Damages 25–35 (5th ed. 1869). Thus, one proponent of § 1 of the Civil Rights Act of 1871 asked during debate: "[W]hat legislation

sections of the Civil Rights Act of 1871 appear to incorporate this principle, and no reason suggests itself for reading § 1983 differently.[10] To the extent that Congress intended that awards under § 1983 should deter the deprivation of constitutional rights, there is no evidence that it meant to establish a deterrent more formidable than that inherent in the award of

---

could be more appropriate than to give a person injured by another under color of . . . State laws a remedy by civil action?" Cong. Globe, 42d Cong., 1st Sess., 482 (1871) (remarks of Rep. Wilson). And one opponent of § 1 complained: "The deprivation may be of the slightest conceivable character, the damages in the estimation of any sensible man may not be five dollars or even five cents; they may be what lawyers call merely nominal damages; and yet by this section jurisdiction of that civil action is given to the Federal courts instead of its being prosecuted as now in the courts of the States." *Id.*, at App. 216 (remarks of Sen. Thurman). See also Nahmod, Section 1983 and the "Background" of Tort Liability, 50 Ind. L. J. 5, 10 (1974).

[10] Section 2 of the Act, 17 Stat. 13–14, now codified at 42 U. S. C. § 1985 (3), made it unlawful to conspire, *inter alia*, "for the purpose of depriving any person or any class of persons of the equal protection of the laws, or of equal privileges or immunities under the laws . . . ." It further provided (emphasis supplied):

"[I]f any one or more persons engaged in any such conspiracy shall do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby any person shall be injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the person so injured or deprived of such rights and privileges may have and maintain an action for the recovery of *damages occasioned by such* injury or *deprivation of rights and privileges* against any one or more of the persons engaged in such conspiracy . . . ."

Section 6 of the Act, 17 Stat. 15, now codified at 42 U. S. C. § 1986, provided (emphasis supplied):

"[A]ny person or persons, having knowledge that any of the wrongs conspired to be done and mentioned in the second section of this act are about to be committed, and having power to prevent or aid in preventing the same, shall neglect or refuse to do so, and such wrongful act shall be committed, such person or persons *shall be liable to the person injured,* or his legal representatives, *for all damages caused by any such wrongful act . . . ."*

compensatory damages. See *Imbler* v. *Pachtman*, 424 U. S., at 442 (WHITE, J., concurring in judgment).[11]

## B

It is less difficult to conclude that damages awards under § 1983 should be governed by the principle of compensation than it is to apply this principle to concrete cases.[12] But over the centuries the common law of torts has developed a set of rules to implement the principle that a person should be compensated fairly for injuries caused by the violation of his legal rights. These rules, defining the elements of damages

---

[11] This is not to say that exemplary or punitive damages might not be awarded in a proper case under § 1983 with the specific purpose of deterring or punishing violations of constitutional rights. See, *e. g., Silver* v. *Cormier,* 529 F. 2d 161, 163–164 (CA10 1976); *Stengel* v. *Belcher,* 522 F. 2d 438, 444 n. 4 (CA6 1975), cert. dismissed, 429 U. S. 118 (1976); *Spence* v. *Staras,* 507 F. 2d 554, 558 (CA7 1974); *Caperci* v. *Huntoon,* 397 F. 2d 799, 801 (CA1), cert. denied, 393 U. S. 940 (1968); *Mansell* v. *Saunders,* 372 F. 2d 573, 576 (CA5 1967); *Basista* v. *Weir,* 340 F. 2d 74, 84–88 (CA3 1965). Although we imply no approval or disapproval of any of these cases, we note that there is no basis for such an award in this case. The District Court specifically found that petitioners did not act with a malicious intention to deprive respondents of their rights or to do them other injury, see n. 6, *supra,* and the Court of Appeals approved only the award of "non-punitive" damages, 545 F. 2d 30, 31 (1976).

We also note that the potential liability of § 1983 defendants for attorney's fees, see Civil Rights Attorney's Fees Awards Act of 1976, Pub. L. 94–559, 90 Stat. 2641, amending 42 U. S. C. § 1988, provides additional— and by no means inconsequential—assurance that agents of the State will not deliberately ignore due process rights. See also 18 U. S. C. § 242, the criminal counterpart of § 1983.

[12] For discussions of the problems of fashioning damages awards under § 1983, see generally McCormack, Federalism and Section 1983: Limitations on Judicial Enforcement of Constitutional Protections, Part 1, 60 Va. L. Rev. 1, 55–66 (1974); Nahmod, *supra* n. 9, at 25–27, n. 89; Yudof, Liability for Constitutional Torts and the Risk-Averse Public School Official, 49 S. Cal. L. Rev. 1322, 1366–1383 (1976); Comment, Civil Actions for Damages under the Federal Civil Rights Statutes, 45 Texas L. Rev. 1015, 1023–1035 (1967).

and the prerequisites for their recovery, provide the appropriate starting point for the inquiry under § 1983 as well.[13]

It is not clear, however, that common-law tort rules of damages will provide a complete solution to the damages issue in every § 1983 case. In some cases, the interests protected by a particular branch of the common law of torts may parallel closely the interests protected by a particular constitutional right. In such cases, it may be appropriate to apply the tort rules of damages directly to the § 1983 action. See *Adickes* v. *S. H. Kress & Co.*, 398 U. S., at 231–232 (BRENNAN, J., concurring and dissenting). In other cases, the interests protected by a particular constitutional right may not also be protected by an analogous branch of the common law of torts. See *Monroe* v. *Pape*, 365 U. S., at 196, and n. 5 (Harlan, J., concurring); *id.*, at 250–251 (Frankfurter, J., dissenting in part); *Adickes* v. *S. H. Kress & Co.*, *supra*, at 232 (BRENNAN, J., concurring and dissenting); *Bivens* v. *Six Unknown Fed. Narcotic Agents*, 403 U. S., at 394; *id.*, at 408–409 (Harlan, J., concurring in judgment). In those cases, the task will be the more difficult one of adapting common-law rules of damages to provide fair compensation for injuries caused by the deprivation of a constitutional right.

Although this task of adaptation will be one of some delicacy—as this case demonstrates—it must be undertaken. The purpose of § 1983 would be defeated if injuries caused by the deprivation of constitutional rights went uncompensated simply because the common law does not recognize an analogous cause of action. Cf. *Jones* v. *Hildebrant*, 432 U. S. 183, 190–191 (1977) (WHITE, J., dissenting); *Sullivan* v. *Little Hunting Park*, 396 U. S. 229, 240 (1969). In order to further

---

[13] The Court has looked to the common law of torts in similar fashion in constructing immunities under § 1983. See *Imbler* v. *Pachtman*, 424 U. S. 409, 417–419 (1976), and cases there discussed. Title 42 U. S. C. § 1988 authorizes courts to look to the common law of the States where this is "necessary to furnish suitable remedies" under § 1983.

the purpose of § 1983, the rules governing compensation for injuries caused by the deprivation of constitutional rights should be tailored to the interests protected by the particular right in question—just as the common-law rules of damages themselves were defined by the interests protected in the various branches of tort law. We agree with Mr. Justice Harlan that "the experience of judges in dealing with private [tort] claims supports the conclusion that courts of law are capable of making the types of judgment concerning causation and magnitude of injury necessary to accord meaningful compensation for invasion of [constitutional] rights." *Bivens* v. *Six Unknown Fed. Narcotics Agents, supra,* at 409 (Harlan, J., concurring in judgment). With these principles in mind, we now turn to the problem of compensation in the case at hand.

## C

The Due Process Clause of the Fourteenth Amendment provides:

> "[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . ."

This Clause "raises no impenetrable barrier to the taking of a person's possessions," or liberty, or life. *Fuentes* v. *Shevin,* 407 U. S. 67, 81 (1972). Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property. Thus, in deciding what process constitutionally is due in various contexts, the Court repeatedly has emphasized that "procedural due process rules are shaped by the risk of error inherent in the truth-finding process . . . ." *Mathews* v. *Eldridge,* 424 U. S. 319, 344 (1976).[14] Such rules "mini-

---

[14] See, *e. g., Dixon* v. *Love,* 431 U. S. 105, 112–114 (1977); *Ingraham* v. *Wright,* 430 U. S. 651, 675, 677–678, 682 (1977); *Arnett* v. *Kennedy,* 416 U. S. 134, 170 (1974) (POWELL, J., concurring in part and in result in part); *id.,* at 201 (WHITE, J., concurring and dissenting); *id.,* at 214–215

mize substantively unfair or mistaken deprivations of" life, liberty, or property by enabling persons to contest the basis upon which a State proposes to deprive them of protected interests. *Fuentes* v. *Shevin, supra,* at 81.

In this case, the Court of Appeals held that if petitioners can prove on remand that "[respondents] would have been suspended even if a proper hearing had been held," 545 F. 2d, at 32, then respondents will not be entitled to recover damages to compensate them for injuries caused by the suspensions. The court thought that in such a case, the failure to accord procedural due process could not properly be viewed as the cause of the suspensions. *Ibid.;* cf. *Mt. Healthy City Board of Ed.* v. *Doyle,* 429 U. S. 274, 285–287 (1977); *Arlington Heights* v. *Metropolitan Housing Dev. Corp.,* 429 U. S. 252, 270–271, n. 21 (1977). The court suggested that in such circumstances, an award of damages for injuries caused by the suspensions would constitute a windfall, rather than compensation, to respondents. 545 F. 2d, at 32, citing *Hostrop* v. *Board of Junior College Dist. No. 515,* 523 F. 2d, at 579; cf. *Mt. Healthy City Board of Ed.* v. *Doyle, supra,* at 285–286. We do not understand the parties to disagree with this conclusion. Nor do we.[15]

The parties do disagree as to the further holding of the Court of Appeals that respondents are entitled to recover substantial—although unspecified—damages to compensate them for "the injury which is 'inherent in the nature of the

---

(MARSHALL, J., dissenting); *Mitchell* v. *W. T. Grant Co.,* 416 U. S. 600, 609–610, 618 (1974); *Goldberg* v. *Kelly,* 397 U. S. 254, 266 (1970).

[15] A few courts appear to have taken a contrary view in cases where public employees holding property interests in their jobs were discharged with cause but without procedural due process. *E. g., Thomas* v. *Ward,* 529 F. 2d 916, 920 (CA4 1975); *Zimmerer* v. *Spencer,* 485 F. 2d 176, 178–179 (CA5 1973); *Horton* v. *Orange County Bd. of Ed.,* 464 F. 2d 536, 537–538 (CA4 1972). See also *Burt* v. *Board of Trustees of Edgefield County School Dist.,* 521 F. 2d 1201, 1207–1208 (CA4 1975) (opinion of Winter, J.).

wrong,' " 545 F. 2d, at 31, even if their suspensions were justified and even if they fail to prove that the denial of procedural due process actually caused them some real, if intangible, injury. Respondents, elaborating on this theme, submit that the holding is correct because injury fairly may be "presumed" to flow from every denial of procedural due process. Their argument is that in addition to protecting against unjustified deprivations, the Due Process Clause also guarantees the "feeling of just treatment" by the government. *Anti-Fascist Committee* v. *McGrath,* 341 U. S. 123, 162 (1951) (Frankfurter, J., concurring). They contend that the deprivation of protected interests without procedural due process, even where the premise for the deprivation is not erroneous, inevitably arouses strong feelings of mental and emotional distress in the individual who is denied this "feeling of just treatment." They analogize their case to that of defamation *per se,* in which "the plaintiff is relieved from the necessity of producing any proof whatsoever that he has been injured" in order to recover substantial compensatory damages. C. McCormick, Law of Damages § 116, p. 423 (1935).[16]

---

[16] Respondents also contend that injury should be presumed because, even if they were guilty of the conduct charged, they were deprived of the chance to present facts or arguments in mitigation to the initial decisionmaker. Cf. *Gagnon* v. *Scarpelli,* 411 U. S. 778, 784–785 (1973); *Morrissey* v. *Brewer,* 408 U. S. 471, 479–480, 488 (1972). They claim that "[i]t can never be known . . . what, if anything, the exercise of such an opportunity to plead one's cause on judgmental or discretionary grounds would have availed." Brief for Respondents 28. But, as previously indicated, the Court of Appeals held that respondents cannot recover damages for injuries caused by their suspensions if the District Court determines that "[respondents] would have been suspended even if a proper hearing had been held." 545 F. 2d, at 32. This holding, which respondents do not challenge, necessarily assumes that the District Court *can* determine what the outcome would have been if respondents had received their hearing. We presume that this determination will include consideration of the likelihood that any mitigating circumstances to which respondents can point would have swayed the initial decisionmakers.

Petitioners do not deny that a purpose of procedural due process is to convey to the individual a feeling that the government has dealt with him fairly, as well as to minimize the risk of mistaken deprivations of protected interests. They go so far as to concede that, in a proper case, persons in respondents' position might well recover damages for mental and emotional distress caused by the denial of procedural due process. Petitioners' argument is the more limited one that such injury cannot be presumed to occur, and that plaintiffs at least should be put to their proof on the issue, as plaintiffs are in most tort actions.

We agree with petitioners in this respect. As we have observed in another context, the doctrine of presumed damages in the common law of defamation *per se* "is an oddity of tort law, for it allows recovery of purportedly compensatory damages without evidence of actual loss." *Gertz* v. *Robert Welch, Inc.,* 418 U. S. 323, 349 (1974). The doctrine has been defended on the grounds that those forms of defamation that are actionable *per se* are virtually certain to cause serious injury to reputation, and that this kind of injury is extremely difficult to prove. See *id.,* at 373, 376 (WHITE, J., dissenting).[17] Moreover, statements that are defamatory *per se* by their very nature are likely to cause mental and emotional distress, as well as injury to reputation, so there arguably is little reason to require proof of this kind of injury either.[18]

---

[17] "By the very nature of harm resulting from defamatory publications, it is frequently not susceptible of objective proof. Libel and slander work their evil in ways that are invidious and subtle." 1 F. Harper & F. James, Law of Torts § 5.30, p. 468 (1956); see also Restatement of Torts § 621, comment *a,* p. 314 (1938).

[18] The essence of libel *per se* is the publication in writing of false statements that tend to injure a person's reputation. The essence of slander *per se* is the publication by spoken words of false statements imputing to a person a criminal offense; a loathsome disease; matter affecting adversely a person's fitness for trade, business, or profession; or serious sexual misconduct. 1 F. Harper & F. James, Law of Torts §§ 5.9–5.13 (1956);

But these considerations do not support respondents' contention that damages should be presumed to flow from every deprivation of procedural due process.

First, it is not reasonable to assume that every departure from procedural due process, no matter what the circumstances or how minor, inherently is as likely to cause distress as the publication of defamation *per se* is to cause injury to reputation and distress. Where the deprivation of a protected interest is substantively justified but procedures are deficient in some respect, there may well be those who suffer no distress over the procedural irregularities. Indeed, in contrast to the immediately distressing effect of defamation *per se,* a person may not even know that procedures *were* deficient until he enlists the aid of counsel to challenge a perceived substantive deprivation.

Moreover, where a deprivation is justified but procedures are deficient, whatever distress a person feels may be attributable to the justified deprivation rather than to deficiencies in procedure. But as the Court of Appeals held, the injury caused by a justified deprivation, including distress, is not properly compensable under § 1983.[19] This ambiguity in causation, which is absent in the case of defamation *per se,* provides additional need for requiring the plaintiff to convince the trier of fact that he actually suffered distress because of the denial of procedural due process itelf.

Finally, we foresee no particular difficulty in producing evidence that mental and emotional distress actually was caused by the denial of procedural due process itself. Distress is a personal injury familiar to the law, customarily proved by

Restatement (Second) of Torts §§ 558, 559, 569–574 (1977); W. Prosser, Law of Torts § 112 (4th ed. 1971).

[19] In this case, for example, respondents denied the allegations against them. They may well have been distressed that their denials were not believed. They might have been equally distressed if they had been disbelieved only after a full-dress hearing, but in that instance they would have no cause of action against petitioners.

showing the nature and circumstances of the wrong and its effect on the plaintiff.[20]  In sum, then, although mental and emotional distress caused by the denial of procedural due process itself is compensable under § 1983, we hold that neither the likelihood of such injury nor the difficulty of proving it is so great as to justify awarding compensatory damages without proof that such injury actually was caused.

## D

The Court of Appeals believed, and respondents urge, that cases dealing with awards of damages for racial discrimination, the denial of voting rights, and the denial of Fourth Amendment rights support a presumption of damages where procedural due process is denied.[21]  Many of the cases relied upon do not help respondents because they held or implied that some actual, if intangible, injury must be proved before compensatory damages may be recovered.  Others simply did not address the issue.[22]  More importantly, the elements and

---

[20] We use the term "distress" to include mental suffering or emotional anguish.  Although essentially subjective, genuine injury in this respect may be evidenced by one's conduct and observed by others.  Juries must be guided by appropriate instructions, and an award of damages must be supported by competent evidence concerning the injury.  See *Gertz* v. *Robert Welch, Inc.*, 418 U. S. 323, 350 (1974).

[21] See cases cited in *Hostrop* v. *Board of Junior College Dist. No. 515*, 523 F. 2d 569, 579 (CA7 1975), cert. denied, 425 U. S. 963 (1976).

[22] In *Jeanty* v. *McKey & Poague, Inc.*, 496 F. 2d 1119 (CA7 1974), and *Seaton* v. *Sky Realty Co.*, 491 F. 2d 634 (CA7 1974), cited in *Hostrop, supra,* at 579, the court held that damages may be awarded for humiliation and distress caused by discriminatory refusals to lease housing to plaintiffs.  The court's comment in *Seaton* that "[h]umiliation can be inferred from the circumstances as well as established by the testimony," 491 F. 2d, at 636, suggests that the court considered the question of actual injury to be one of fact.  See generally Annot., Recovery of Damages for Emotional Distress Resulting from Racial, Ethnic, or Religious Abuse or Discrimination, 40 A. L. R. 3d 1290 (1971).

In *Basista* v. *Weir*, 340 F. 2d 74 (CA3 1965); *Sexton* v. *Gibbs*, 327 F. Supp. 134 (ND Tex. 1970), aff'd, 446 F. 2d 904 (CA5 1971), cert. denied,

prerequisites for recovery of damages appropriate to compensate injuries caused by the deprivation of one constitutional right are not necessarily appropriate to compensate injuries caused by the deprivation of another. As we have said, *supra*, at 258–259, these issues must be considered with reference to the nature of the interests protected by the particular constitutional right in question. For this reason, and without intimating an opinion as to their merits, we do not deem the cases relied upon to be controlling.

---

404 U. S. 1062 (1972); and *Rhoads* v. *Horvat*, 270 F. Supp. 307 (Colo. 1967), cited in *Hostrop, supra,* at 579, the courts indicated that damages may be awarded for humiliation and distress caused by unlawful arrests, searches, and seizures. In *Basista* v. *Weir,* the court held that nominal damages could be awarded for an illegal arrest even if compensatory damages were waived; and that such nominal damages would, in an appropriate case, support an award of punitive damages. 340 F. 2d, at 87–88. Because it was unclear whether the plaintiff had waived his claim for compensatory damages, that issue was left open upon remand. *Id.,* at 88. In *Sexton* v. *Gibbs,* where the court found "that Plaintiff suffered humiliation, embarrassment and discomfort," substantial compensatory damages were awarded. 327 F. Supp., at 143. In *Rhoads* v. *Horvat,* the court allowed a jury award of $5,000 in compensatory damages for an illegal arrest to stand, stating that it did "not doubt that the plaintiff was outraged by the arrest." 270 F. Supp., at 311.

*Wayne* v. *Venable,* 260 F. 64 (CA8 1919), cited in *Hostrop, supra,* at 579, and *Ashby* v. *White,* 1 Bro. P. C. 62, 1 Eng. Rep. 417 (H. L. 1703), rev'g 2 Ld. Raym. 938, 92 Eng. Rep. 126 (K. B. 1703), do appear to support the award of substantial damages simply upon a showing that a plaintiff was wrongfully deprived of the right to vote. Citing *Ashby* v. *White,* this Court has held that actions for damages may be maintained for wrongful deprivations of the right to vote, but it has not considered the prerequisites for recovery. *Nixon* v. *Herndon,* 273 U. S. 536, 540 (1927); see also *Smith* v. *Allwright,* 321 U. S. 649 (1944); *Coleman* v. *Miller,* 307 U. S. 433, 469 (1939) (opinion of Frankfurter, J.); *Nixon* v. *Condon,* 286 U. S. 73 (1932); *Myers* v. *Anderson,* 238 U. S. 368 (1915); *Giles* v. *Harris,* 189 U. S. 475 (1903); *Swafford* v. *Templeton,* 185 U. S. 487 (1902); *Wiley* v. *Sinkler,* 179 U. S. 58 (1900). The common-law rule of damages for wrongful deprivations of voting rights embodied in *Ashby* v. *White* would, of course, be quite relevant to the analogous question under § 1983.

## III

Even if respondents' suspensions were justified, and even if they did not suffer any other actual injury, the fact remains that they were deprived of their right to procedural due process. "It is enough to invoke the procedural safeguards of the Fourteenth Amendment that a significant property interest is at stake, whatever the ultimate outcome of a hearing . . . ." *Fuentes* v. *Shevin,* 407 U. S., at 87; see *Codd* v. *Velger,* 429 U. S., at 632 (STEVENS, J., dissenting); *Coe* v. *Armour Fertilizer Works,* 237 U. S. 413, 424 (1915).

Common-law courts traditionally have vindicated deprivations of certain "absolute" rights that are not shown to have caused actual injury through the award of a nominal sum of money.[23] By making the deprivation of such rights actionable for nominal damages without proof of actual injury, the law recognizes the importance to organized society that those rights be scrupulously observed; but at the same time, it remains true to the principle that substantial damages should be awarded only to compensate actual injury or, in the case of exemplary or punitive damages, to deter or punish malicious deprivations of rights.

Because the right to procedural due process is "absolute" in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed, see *Boddie* v. *Connecticut,* 401 U. S. 371, 375 (1971); *Anti-Fascist Committee* v. *McGrath,* 341 U. S., at 171–172 (Frankfurter, J., concurring), we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury.[24] We therefore hold that

---

[23] See D. Dobbs, Law of Remedies § 3.8, pp. 191–193 (1973); C. McCormick, Law of Damages §§ 20–22 (1935); Restatement of Torts § 907 (1939).

[24] A number of lower federal courts have approved the award of nominal damages under § 1983 where deprivations of constitutional rights are not

if, upon remand, the District Court determines that respondents' suspensions were justified, respondents nevertheless will be entitled to recover nominal damages not to exceed one dollar from petitioners.[25]

The judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

MR. JUSTICE MARSHALL concurs in the result.

MR. JUSTICE BLACKMUN took no part in the consideration or decision of this case.

---

shown to have caused actual injury. *E. g., Thompson* v. *Burke,* 556 F. 2d 231, 240 (CA3 1977); *United States ex rel. Tyrrell* v. *Speaker,* 535 F. 2d, at 829–830; *Magnett* v. *Pelletier,* 488 F. 2d 33, 35 (CA1 1973); *Basista* v. *Weir,* 340 F. 2d, at 87; *Bell* v. *Gayle,* 384 F. Supp. 1022, 1026–1027 (ND Tex. 1974); *United States ex rel. Myers* v. *Sielaff,* 381 F. Supp. 840, 844 (ED Pa. 1974); *Berry* v. *Macon County Bd. of Ed.,* 380 F. Supp. 1244, 1248 (MD Ala. 1971).

[25] Respondents contend that the Court of Appeals' holding could be affirmed on the ground that the District Court held them to too high a standard of proof of the amount of damages appropriate to compensate intangible injuries that are proved to have been suffered. Brief for Respondents 49–52. It is true that plaintiffs ordinarily are not required to prove with exactitude the amount of damages that should be awarded to compensate intangible injury. See *Gertz* v. *Robert Welch, Inc.,* 418 U. S., at 350. But, as the Court of Appeals said, "in the case at bar, there is no proof of individualized injury to [respondents], such as mental distress . . . ." 545 F. 2d, at 31. With the case in this posture, there is no occasion to consider the quantum of proof required to support a particular damages award where actual injury is proved.