**STEPLIGHT, Appellant,**

v.

**BELPULSI et al., Appellees.**

[Cite as *Steplight v. Belpulsi* (1991), 76 Ohio App.3d 384.]

Court of Appeals of Ohio,
Lake County.

No. 90–L–15–144.

Decided Nov. 25, 1991.

*Jeffrey R. Cimaglio,* for appellant.
*Gary S. Andrachik,* for appellees.

NADER, Presiding Judge.

The parties are in substantial agreement as to the facts which precipitated this lawsuit.

In July 1988, appellant, Emma Steplight, shot and killed her husband, Henry Steplight, Jr. Appellant was subsequently acquitted of the charge of manslaughter.

Appellee, Detective Sergeant Ronald Belpulsi of the Wickliffe Police Department, was responsible for the investigation of the death of appellant's husband. On August 8, 1988, Belpulsi went to the home of Clarence Steplight, Henry's brother. Detective Belpulsi sought to record conversations between Sandra Steplight, Henry's sister-in-law, and appellant. Detective Belpulsi had been told by Clarence that appellant was asking Sandra to testify to things which appellant knew were not true. Appellant purportedly asked Sandra to testify to Henry's abusive ways. Sandra had never seen Henry abuse appellant. In response to Clarence's request, and in order to obtain evidence to use against appellant, Detective Belpulsi recorded three conversations between Sandra and appellant.

Prior to the third call, Detective Belpulsi fabricated a story which Sandra related to appellant. Sandra told appellant that the police had come to the house to ask Sandra some questions. Sandra said she had told the police she was at appellant's house during Easter "last year" and, at that time, Sandra had observed that Henry "jumped" appellant and blackened her eye. Both appellant and Sandra knew this event never occurred. Appellant's response, when she heard Sandra's story, was "OK, I didn't expect that." Appellant made no statements which could be construed as suborning perjury. None of the recorded statements was used at appellant's trial.

In the course of discovery for appellant's criminal trial, appellant became aware of Detective Belpulsi's conduct. She related activities to her therapist, whom she started seeing after shooting her husband. Both appellant and her therapist testified to the fact that learning of Detective Belpulsi's conduct was a "stressor" in appellant's life.

Appellant brought suit pursuant to Section 1983, Title 42, U.S.Code, in the Lake County Court of Common Pleas, alleging that appellees had violated her civil rights.[1] Appellant also alleged causes of action under the state Constitution and state statutes, for intentional infliction of emotional distress, for the violation of privacy rights and for malicious prosecution. The causes of action for the violation of the state Constitution and statutes were dismissed before trial. Appellant moved for summary judgment on the issue of appellee's liability. This motion was denied.

At the close of appellant's evidence, appellees moved for a directed verdict on the remainder of appellant's case. *Inter alia,* the trial court focused on Detective Belpulsi's concern that appellant was suborning perjury. Also, the

---

**1.** Specifically, appellant argues appellees violated her Sixth Amendment right to counsel. The Sixth Amendment to the United States Constitution states, in pertinent part: "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defense."

court stated that no evidence had been introduced relating to the liability of Wickliffe. Further, with regard to appellant's claim of emotional injury, the trial court stated that no expert testimony had been elicited which was sufficient to make out appellant's case. Finally, the court stated that in the absence of proof of emotional injury, appellant's case must fail because she did not show that she was prejudiced by Detective Belpulsi's actions.

Appellant timely appeals and raises the following assignments of error:

"1. The trial court erred in denying plaintiff/appellant's motion for summary judgment as to liability of the defendants.

"2. The trial court erred in granting defendants/appellees' motion to dismiss, made at the close of plaintiff/appellant's case, on the grounds that plaintiff had not sustained her initial burden of proof."

It should be noted that appellant's arguments relate solely to her Section 1983 action; therefore, this court will not address the trial court's rulings on the other causes of action. App.R. 12(A). Furthermore, since both assignments relate to Section 1983, they will be addressed together.

█ In order to establish a *prima facie* case under Section 1983, a plaintiff must establish that a person acting under color of law causes another person to be deprived of his or her rights under the United States Constitution or laws and, where damages are sought (as opposed to merely injunctive relief), that damage results from the unconstitutional or illegal act. Section 1983, Title 42, U.S.Code. *Carey v. Piphus* (1978), 435 U.S. 247, 255, 98 S.Ct. 1042, 1047–1048, 55 L.Ed.2d 252, 259; *Wood v. Strickland* (1975), 420 U.S. 308, 319, 95 S.Ct. 992, 999, 43 L.Ed.2d 214, 223.

In the case at hand, the appellant's cause of action fails because she did not establish that appellee Belpulsi's actions violated the Constitution. Additionally, the trial court properly dismissed appellant's case against Wickliffe because appellant established no custom or policy of the municipality; such proof is a prerequisite to municipal liability. Finally, the trial court's judgment is affirmed because Sergeant Belpulsi is qualifiedly immune under the facts established by appellant's case.

Appellant hinges her argument upon *Maine v. Moulton* (1985), 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481. In that criminal case, the defendant, Moulton, sought to suppress tapes made by police officers of a conversation Moulton had with Colson, a police informant. These conversations occurred after Moulton had been indicted on charges of theft and had retained legal counsel. It is important to note that these conversations were recorded for a dual purpose. The officers were investigating the theft charges pending against Moulton and his plans to kill Gary Ewell, a witness for the state.

The United States Supreme Court held that the police conduct violated Moulton's Sixth Amendment right to counsel with respect to the pending theft charges. Therefore, at trial on the theft charges, the conversations should have been excluded from evidence. Of greater import to this case, however, is the court's condonation of the police officer's investigation of *further* criminal charges to which the right of counsel had not yet attached. Justice Brennan, citing *Massiah v. United States* (1964), 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246, limited the remedy of the Sixth Amendment violation, in the pending theft case, to the suppression of the evidence from presentation in that case. The court went on to recognize "an interest in investigating new or additional crimes." *Moulton, supra,* 474 U.S. at 179, 106 S.Ct. at 489, 88 L.Ed.2d at 498.

"[T]o exclude evidence pertaining to charges as to which the Sixth Amendment right to counsel had not attached at the time the evidence was obtained, simply because other charges were pending at that time, would unnecessarily frustrate the public's interest in the investigation of criminal activities." *Id.* at 180, 106 S.Ct. at 489, 88 L.Ed.2d at 498.

Thus, obtaining statements from an individual at a time *prior* to indictment is not a Sixth Amendment violation.

■ In the instant case, on cross-examination by appellant's trial counsel, Detective Belpulsi testified to his purpose for recording appellant's conversation with Sandra:

" * * * I had been informed by Clarence Steplight that Emma Steplight was calling Sandra and asking Sandra to help out with the fact that she was being abused by Henry, and Sandra was her sister-in-law and that she may or may not have witnessed—."

Later, appellant's trial counsel engaged Detective Belpulsi in the following dialogue:

"Q. Well, you basically told Sandra Steplight what your game plan was, didn't you?

"A. She knew why I was there, yes.

"Q. And that was, you wanted her to basically give Emma the opportunity to ask her to lie for her, right?

"A. I wanted to verify what I had been told prior to going there.

"Q. And that was that Emma was supposedly asking Sandra Steplight to testify to physical abuse that supposedly never occurred, or she never witnessed?

"A.  That's correct.

" * * *

"Q.  Right.  So if Emma was to say, 'Tell him you saw Henry doing this and this,' and you would use that tape and say 'those things didn't happen,' and then use that against Emma to say, 'See, she's suborning perjury'?

"A.  Yes, that's what I planned to do."

We hold, in light of *Moulton,* that no violation of the Constitution occurred with respect to Detective Belpulsi's investigation of Clarence Steplight's accusation that appellant was attempting to suborn the perjury of Sandra Steplight.  If appellant in this case prevailed under Section 1983, the societal interest of investigating possible ongoing, unindicted crimes would be squelched;  this result is proscribed by *Moulton.*

■  With respect to the directed verdict for Wickliffe, a careful review of the record reveals no evidence which would impose liability on the municipality.  In order to hold a municipality liable under Section 1983, a plaintiff must establish that the constitutional violation occurred as a result of a *municipal custom* or *policy;* in short, the doctrine of *respondeat superior* is not applied to Section 1983.  *Monell v. Dept. of Social Serv. of the City of New York* (1978), 436 U.S. 658, at 690–691 and 694, 98 S.Ct. 2018, at 2035–2036 and 2037, 56 L.Ed.2d 611, at 635–636 and 637.

■  Appellant's trial counsel elicited the fact that the other Wickliffe detectives (Curts and Vargo) treated appellant "real nice."  No evidence was produced which indicated Wickliffe had a municipal "policy" of violating people's Sixth Amendment rights.  Nor did appellant introduce anecdotal evidence of other Sixth Amendment violations by the Wickliffe Police Department which would circumstantially suggest a "custom" of such violations.  The absence of such evidence is fatal to the case against the municipality under *Monell.*

■  Finally, as a matter of law, Detective Belpulsi is qualifiedly immune from liability under the facts of this case.  In *Harlow v. Fitzgerald* (1982), 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396, the United States Supreme Court defined the doctrine of qualified immunity.  Pursuant to *Harlow,* a person is immune from liability if he or she acts in such a way that the action does not violate *clearly* established law of which a reasonable person would have known.  *Id.* at 818, 102 S.Ct. at 2738, 73 L.Ed.2d at 410.  The court restated

the purpose of the qualified immunity rule in *Anderson v. Creighton* (1987), 483 U.S. 635, 646, 107 S.Ct. 3034, 3042, 97 L.Ed.2d 523, 534–535:

"The general rule of qualified immunity is intended to provide government officials with the ability 'reasonably [to] anticipate when their conduct may give rise to liability for damages.' *Davis* [*v. Scherer*], 468 U.S. [183], at 195, 104 S.Ct. [3012], at 3019 [82 L.Ed.2d 139 at 150]. Where that rule is applicable, officials can know that they will not be held personally liable as long as their actions are reasonable in light of current American law."

Thus, Detective Belpulsi is entitled to immunity on the facts of this case. His investigation of the allegation that appellant was suborning perjury was *not* a violation of clearly established law. As set forth above, *Moulton* expressly allows for such activity when an officer is investigating unindicted crimes to which a defendant's right to counsel has not attached. We hold Detective Belpulsi is immune from liability in light of the present state of the law regarding the Sixth Amendment.

In conclusion, the appellant's two assignments of error are without merit because she failed to establish a deprivation of her constitutional rights. Further, appellant failed to allege and prove facts sufficient to establish municipal liability under Section 1983. Finally, Detective Belpulsi was qualifiedly immune from liability for his actions under the facts of this case.

Therefore, the judgment of the trial court is affirmed.

*Judgment affirmed.*

BAIRD, J., concurs.

PRYATEL, J., dissents.

WILLIAM R. BAIRD, J., of the Ninth Appellate District, and August Pryatel, J., retired, of the Eighth Appellate District, sitting by assignment.