979 F.2d 848
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Richard L. MASSEY, Jr., Plaintiff-Appellant,
v.
Richard SINGLETON; Bishop L. Robinson, Defendants-Appellees.
 No. 91-7297.
 United States Court of Appeals, Fourth Circuit.
 Submitted Sept. 30, 1992.
Decided Nov. 9, 1992.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore, No. CA-90-362-JFM; J. Frederick Motz, District Judge.
 Richard L. Massey, Jr., appellant pro se.
 John Joseph Curran, Jr., Atty. Gen., Richard M. Kastendieck, Office of the Atty. Gen. of Maryland, Baltimore, Md., for appellees.
 D.Md.
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 Before MURNAGHAN and HAMILTON, Circuit Judges, and SPROUSE, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Richard Massey, Jr., a former inmate at the Maryland House of Correction at Jessup, appeals from a grant of summary judgment to Defendants in his civil rights action under 42 U.S.C. § 1983 (1988). Because the placement of Massey in administrative segregation pending the outcome of a criminal investigation by police without independent review of evidence by prison officials may have violated Massey's right to due process, we vacate the decision of the district court in part. We affirm the district court's dismissal of all remaining claims.
 
 
 2
 Massey alleges that officials violated his rights during a warrantless search of his jail cell, and his subsequent placement on segregated status. Massey's cell was searched by the Maryland State Police without a warrant to gather evidence for a criminal investigation. The search was not prompted by prison officials, and was not directly motivated by concerns about institutional security. Massey's legal documents and personal mail were read by State Police during the search. Massey's typewriter was seized and has not been returned.
 
 
 3
 Shortly thereafter, Massey was placed in administrative segregation pending the outcome of the criminal investigation. Massey remained on segregation for six months, until his transfer to the Maryland Penitentiary. During his time in segregation Massey alleges that (1) he received inadequate access to legal references and legal assistance; (2) the ventilation system was inadequate and exposed him to asbestos; (3) he was exposed to unsanitary conditions and excessive noise; (4) he was not provided with adequate opportunities for exercise or education; (5) his mail was delayed and lost; and (6) he was deprived of privileges afforded to other inmates.
 
 
 4
 Our review of the record and the district court's opinion discloses that Massey's appeal of the district court's dismissal of his complaints about the conditions of confinement in administrative segregation and access to the courts is without merit. We also find that prison officials are immune from any liability accruing as a direct result of the search and seizure, see Tarantino v. Baker, 825 F.2d 772, 775 (4th Cir.1987), cert. denied, 489 U.S. 1010 (1989), and that prison officials are not appropriate parties to Massey's action to regain possession of his typewriter.[1] We therefore affirm the district court's disposition of these claims. Massey v. Singleton, No. CA-90-362-JFM (D.Md. Aug. 6, 1991).
 
 
 5
 Massey's six-month detention in administrative segregation raises procedural due process problems. When the state imposes limits on discretion, it creates a liberty interest which is protected by the Due Process Clause regardless of whether the limits imposed stem from statute, rule, or regulation. Wright v. Enomoto, 462 F.Supp. 397, 402 (N.D.Cal.1976), aff'd, 434 U.S. 1052 (1978).
 
 
 6
 Regulations impose "substantive limitations on official discretion," Olim v. Wakinekona, 461 U.S. 238, 249 (1983), by using "language of an unmistakably mandatory character, requiring that certain procedures 'shall,' 'will,' or 'must' be employed, ... and that administrative segregation will not occur absent specified substantive predicates." Hewitt v. Helms, 459 U.S. 460, 471-72 (1983). Maryland Division of Correction Regulation (DCR) 110-19, which establishes policy and procedure for the use of administrative segregation in the state's correctional institutions, creates a liberty interest through the use of mandatory language and by specifying procedures to be followed by prison officials when assigning prisoners to segregation.[2] Thus, the state is required to abide by minimum procedural due process requirements when it places an inmate in administrative segregation.
 
 
 7
 Although the state is not required to follow its own state-created procedures, Riccio v. County of Fairfax, Va., 907 F.2d 1459 (4th Cir.1990), an inmate must "receive some notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation." Hewitt v. Helms, 459 U.S. 460, 476 (1983). In this context, minimum due process includes a meaningful opportunity to be heard on the issues of whether probable cause existed to continue the investigation and whether the pendency of the investigation affected the safety or security of the institution. Id. at 476-77.
 
 
 8
 "[T]he right to procedural due process is 'absolute' in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed...." Carey v. Piphus, 435 U.S. 247, 266 (1978). Massey may be entitled to relief regardless of whether administrative segregation was, in fact, appropriate in this case.[3]
 
 
 9
 The fact that Massey was the subject of a criminal investigation, and that the state police wanted him to remain in segregation "until further notice," appears to have been dispositive in the classification team's decisions. There is no indication that the classification team ever independently considered the nature of the charges against Massey, or determined whether and how these charges might implicate institutional security, justifying administrative segregation. It is fundamentally hostile to due process to place a prisoner with a protected liberty interest in avoiding segregation into segregation for six months solely on the strength of generalized, hearsay allegations originating from the police that he is the subject of a criminal investigation, without indictment, or any specific evidence in the record to support heightened institutional security concerns. See Baker v. Lyles, 904 F.2d 925, 931-34 (4th Cir.1990) ("modicum of evidence" that inmate was a security risk required to satisfy due process).
 
 
 10
 We vacate the district court's grant of summary judgment to the Defendants on this issue, and remand for further proceedings not inconsistent with this opinion. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the Court and argument would not aid the decisional process.
 
 
 11
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 
 
 
 [1]
 We do not read the district court's decision as precluding Massey from seeking the return of his typewriter from the parties in possession in the appropriate forum at the appropriate time
 
 
 [2]
 The exact wording of DCR 110-19 has recently undergone some changes. The relevant provisions of the regulations in their present form are as follows:
 V. Policy:
 It is the policy of the Division of Correction to utilize administrative segregation when an inmate requires close supervision and segregation from the general inmate population.... Administrative segregation may be used to ensure the safety and security of the institution....
 VI. Procedure:
 A. Procedures for admission, retention, and release.
 * * *
 
 
 [2]
 An inmate may be placed on administrative segregation only in response to a potential threat to the safety, security, and good order of the institution, and there must be reason to believe that the placement of the inmate on administrative segregation will reduce that threat. The following are situations which may warrant the placement of an inmate on administrative segregation:
 a. To prevent the escape of the inmate, when there is reason to believe that the inmate is an escape risk;
 b. When an inmate is under sentence of death;
 c. During the pendency of a criminal investigation, when for example, there is reason to believe that the inmate might otherwise intimidate potential witnesses;
 d. During the pendency of adjustment proceedings, when the inmate has been charged with a violation of inmate rules and there is reason to believe the inmate is a potential threat to the security of the institution.
 
 
 [3]
 Notification of the inmate
 a. The inmate shall be provided with a copy of the "Notice of Assignment to Administrative Segregation" (Appendix 1) within 48 hours after his or her placement on administrative segregation. The inmate shall sign the acknowledgement at the bottom of the original notice, and the original shall then be forwarded to the classification team for further action.
 * * *
 
 
 [4]
 Initial review
 a. The inmate's placement on administrative segregation shall be reviewed by the classification team within 96 hours. The inmate will be given the opportunity to respond to the reasons stated for his/her placement on administrative segregation.
 
 
 [3]
 This Court has held that although the de minimis nature of a constitutional violation may affect the amount of damages, it may not limit the right of action. Pritchard v. Perry, 508 F.2d 423 (4th Cir.1975)