PAEZ,
concurring in part, dissenting in part.
I concur in Parts I and III of the memorandum disposition. I respectfully dissent, however, from the majority’s decision in Part II to affirm the district court’s summary dismissal of the Neaves’ equal protection claim. Because there are triable issues of fact regarding the defendant officers’ intent, I would reverse the district court’s ruling on this claim and remand for further proceedings.
As noted by the majority, we have recognized an equal protection claim when police officers have allegedly acted with discriminatory intent in refusing to investigate alleged criminal acts against a victim. See e.g., Estate of Macias v. Ihde, 219 F.3d 1018, 1028 (9th Cir.2000); Navarro v. Block, 72 F.3d 712, 716-17 (9th Cir.1995). Although the Macias and Navarro claims were either brought by the victim or the estate of a deceased victim, I do not believe that the equal protection analysis we *433 employed in those cases should be limited to plaintiffs who were crime victims, as the majority seems to suggest. Indeed, the Equal Protection Clause guarantees that all persons who are similarly situated are entitled to equal treatment by government officials. City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985). Thus, an individual who alleges that a police officer intentionally treated him or her differently than other similarly-situated individuals and alleges that there was no rational basis for the difference in treatment states a viable Fourteenth Amendment Equal Protection Claim. Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000).
Although the summary judgment record does not reflect that the Neaves explicitly requested an investigation of their son’s death, we can reasonably infer from the record that the Neaves made such a request. As the record reflects, the police immediately suspected that there might have been criminal conduct involved in their son’s death, and there is nothing in the record to show that the Neaves were a target of the investigation. Because the Neaves are entitled to all reasonable inferences in resisting summary judgment, it is reasonable to infer, in the circumstances of this case, that the Neaves requested the police to investigate the death of their son, especially after the coroner declared his death to be a homicide. When viewed in this context, the Equal Protection claim is analogous to those cases in which individuals requested police services and were denied such services or were afforded inferi- or services. See Macias, 219 F.3d at 1028; Navarro, 72 F.3d at 716-17.
Moreover, as I understand the Neaves’ Equal Protection claim, it is not tied to their denial of access claim. They made this point in their opposition to Defendants’ summary judgment motion and at oral argument before this panel. If the Neaves can prove that they were treated differently from other similarly situated individuals, then they could recover damages for any injury they suffered — including emotional distress. See Carey v. Piphus, 435 U.S. 247, 264, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978) (holding that damages for emotional distress are available under § 1983). Indeed, the Neaves contend that they suffered injury, not from denial of access to the courts, but from the unequal treatment that they received during the defendants’ investigation of their son’s death.
The majority concludes that even if the Neaves were treated differently from other similarly situated individuals, they failed to show that Defendants acted with an intent or purpose to discriminate against them because of their membership in a class. Although the Neaves must demonstrate that the police officers acted “ ‘because of,’ not merely ‘in spite of” the Neaves’ desire to see Cummings held responsible for the death of their son, see Pers. Adm’r of Mass. v. Feeney, 442 U.S. 256, 279, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979), the defendants’ alleged desire to protect Cummings, in my view, does not negate a possible showing of discriminatory intent. Whether Defendants desired to protect Cummings from criminal and civil liability or whether they intentionally discriminated against the Neaves because the Neaves wanted Defendants to investigate Cummings’ role in their son’s death raises a genuine question of fact for the jury. Because this issue is the very heart of the dispute, I cannot agree with the majority that it is “undisputed ... that any improper conduct by Defendants was motivated by a desire to protect the babysitter.” Memorandum Disposition at 5.
Plaintiffs presented evidence that Gil and Doakes permitted Cummings to meet *434 with Sergeant Roger Michael, Cummings’ father, before they conducted their investigative interview with her, and that Michael was permitted to maintain regular contact with the investigating officers about the status of the investigation in spite of the fact that he was worried Cummings might have harmed Scott Neaves. Further, the Neaves offered evidence that police officers in the San Diego Police Department considered their fellow officers and their relatives as “family,” and that the officers involved in the investigation had known Sergeant Michael for more than 10 years. In addition, Defendants did not collect evidence from or take pictures of the crime scene, even though they closed off some parts of Cummings’ home on the night Scott collapsed.
Presented with this evidence, a reasonable juror could find that Defendants treated the Neaves differently than other individuals whose children were victims of child abuse because Cummings was the suspected perpetrator of the Neaves’ son’s death. Put another way, because there is sufficient evidence in the record to show that Defendants had a constitutionally impermissible goal, adopted an impermissible means of achieving that goal, and their actions produced an impermissible effect, a reasonable juror could conclude that Defendants were motivated, at least in part, by a desire to intentionally treat the Neaves differently by conducting an inadequate investigation of their son’s death without any rational basis. See Myers v. County of Orange, 157 F.3d 66, 74-76 (2d Cir.1998); Backlund v. Hessen, 104 F.3d 1031, 1033-34 (8th Cir.1997). Accordingly, I would reverse the district court’s ruling on the Neaves’ equal protection claim and remand that claim for further proceedings.