Steven N. GOLDBERG, Plaintiff,

v.

**BOARD OF EDUCATION OF the HEMPSTEAD SCHOOL DISTRICT, Defendant.**

No. 91–CV–3161 (TCP).

United States District Court, E.D. New York.

Nov. 26, 1991.

Andrew B. Schultz, Great Neck, N.Y., for plaintiff.

Kevin P. Simmons, Berkman, Henoch, Peterson & Peddy, Garden City, N.Y., for defendant.

## MEMORANDUM AND ORDER

PLATT, Chief Judge.

Defendant has moved to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, defendant's motion is denied.

## BACKGROUND

In November, 1984, plaintiff was appointed to the administrative position of Director of Pupil Personnel Services ("DPPS") by the defendant Board of Education of the Hempstead School District ("Board"). Plaintiff was granted tenure on November 1, 1987. In a Board meeting on August 1, 1991, plaintiff's position was eliminated, allegedly for financial reasons. The duties previously performed by plaintiff were incorporated into the job responsibilities of a new position, created at that same Board meeting, entitled Assistant Superintendent for Personnel: Professional Staff, Civil Service, and Pupils. Plaintiff was not given a hearing prior to the elimination of his position, nor was plaintiff offered the new position of Assistant Superintendent of Personnel.

Plaintiff sued the Hempstead School District alleging in his complaint a violation of his right to substantive and procedural due process under the Fourteenth Amendment, as well as a violation of section 2510(1) of the New York Education law. Defendant moved to dismiss arguing that no hearing was required and that there was no violation of New York law.

## DISCUSSION

■ The Fourteenth Amendment provides that no state shall deprive "any person of life, liberty, or property, without due process of law." U.S. Const.Amend. 14, § 1. In any action alleging a violation of the Fourteenth Amendment, a threshold issue is whether plaintiff has a constitutionally protected life, liberty or property interest at stake. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538, 105 S.Ct. 1487, 1491, 84 L.Ed.2d 494 (1985). In this case, plaintiff was a tenured administrator for the Hempstead Board of Education. As a tenured administrator, plaintiff's position was protected by New York Education law section 3012(2), which provides that plaintiff "shall hold [his] position during good behavior and efficient and competent service, and shall not be removed except for [certain causes], after a hearing." N.Y.Educ.Law § 3012(2) (McKinney 1981). This State law creates a property interest protected (or more accurately capable of protection) under the Constitution. *See Loudermill*, 470 U.S. at 538–39, 105 S.Ct. at 1491–92.

There are now two closely related issues before the Court. First, whether plaintiff was entitled to a pre-termination hearing prior to the abolition of his position in the School District; and second, whether under section 2510(1) plaintiff was entitled to the newly created position of Assistant Superintendent of Personnel. These same issues were discussed at length, in a case involving a very similar set of facts, in an opinion of this Court rendered by Judge Leonard D. Wexler. *DeSimone v. Board of Ed., South Huntington Union Free School Dist.*, 612 F.Supp. 1568 (E.D.N.Y.1985).

In *DeSimone*, the defendant Board of Education abolished plaintiff's position as High School Dean and simultaneously created a new position entitled High School Administrative Assistant. The plaintiff was not given any kind of hearing prior to these steps. As in the present case, plaintiff sued alleging a violation of section 2510 of the New York Education law and the Fourteenth Amendment. "Without annunciating a comprehensive theory regarding the circumstances in which the Due Process Clause of the Fourteenth Amendment would require a hearing prior to the discontinuance of a teacher's services pursuant to [New York] Education law § 2510(2)," Judge Wexler held that "the Due Process Clause required such a pre-termination hearing" in the *DeSimone* case. *Id.* at 1571.

In holding that due process required a pre-termination hearing, the Court noted three factors: first that the plaintiff had been deprived of his means of livelihood; second that the old and new positions were sufficiently similar so that "there was [a] substantial *possibility* that plaintiff might possess a substantive right under [section 2510(1)] to occupy the new position," *id.;* and third that the issue of whether two positions were "similar" for section 2510(1) purposes was not "readily reducible to pure questions of law." *Id.*

Judge Wexler then discussed the appropriate remedy for the School Board's deprivation of plaintiff's property right without due process. "When official policy results in a person being deprived of property or liberty without procedural due process, and such deprivation would have taken place even if a proper hearing had been held, then the person is not entitled to compensatory damages for the deprivation itself." *Id.* (citing *Carey v. Piphus*, 435 U.S. 247, 260, 98 S.Ct. 1042, 1050, 55 L.Ed.2d 252 (1978)). In such a case, the Court noted, the plaintiff would only be entitled to nominal damages for the denial of due process (*i.e.*, the lack of a pre-termination hearing), unless he demonstrates actual injury attributable to the denial of due process as opposed to the deprivation itself.

Although the Court held that the plaintiff was deprived of property without procedural due process of law because the School Board failed to give plaintiff a pre-termination hearing, the Court could not determine, on the basis of the papers submitted, whether the old and new positions were in reality "similar" for purposes of section 2510(1). If the positions were in reality similar, then the plaintiff would have been entitled to compensatory damages for the denial of due process. On the other hand, if the positions were found to be *not* similar under section 2510(1) such that the plaintiff would have been discontinued even if a proper hearing had been held, then he would not be entitled to more than nominal damages, absent a demonstration of actual injury attributable to the denial of due process as indicated above. The Court found a trial would be necessary to resolve these issues. *See id.* 612 F.Supp. at 1571–72, 1574.

■ With *DeSimone* as a guide, we now consider the facts of the present case. As in *DeSimone*, this case involves the plaintiff's means of livelihood and the question of "similarity" under New York Education law section 2510(1). We agree with Judge Wexler that these factors weigh in favor of requiring a pre-termination hearing. To assess whether there was a "substantial possibility" that the two positions were "similar," we must examine the job descriptions of the positions in question.

The job description for the position of Director of Pupil Personnel Services lists the following performance responsibilities:

1. Member of the Superintendent's Cabinet;

2. Administration and supervision of the District's educational and referral program for students with handicapping conditions;

3. Assume and carry out responsibilities of the position of Chairperson of the Committee on the Handicapped;

4. Overall district supervision of the Counselling and Guidance functions;

5. Direct and coordinate programs involving support personnel who provide special services, such as, School Nurse, Teachers, Speech Therapists, Social Workers, etc.;

6. Develop and implement long range curriculum planning for Special Education programs;

7. Supervise and evaluate all administrative, teacher and support staff in the pupil personnel area;

8. Provide innovative and informational professional development programs to pupil personnel staff;

9. Oversee the District's Home Tutoring Program for eligible student;

10. Assist in preparation of the annual budget in those areas related to special education and all other Pupil Personnel fields;

11. Communicate with parents regarding proper interpretation of state and district regulations regarding special education;

12. Develop and coordinate a responsive and accessible district-wide Health Services Program;

13. Knowledgeable and comprehensive understanding of current trends of statutes on special education at the state and federal levels;

14. Keep the Board, administration, staff and school community informed regarding special education regulations and the functions of Pupil Personnel Services;

15. Performs other appropriate duties as directed by the Superintendent and/or Assistant Superintendent for Curriculum and Instructions;

16. Direct and coordinate the conducting of the District's census;

17. Coordinate the District's screening program;

18. Direct and coordinate central registration.

Exhibit C to Def's Aff. in Supp. of Mot. to Dismiss.

The job description for the Assistant Superintendent for Personnel: Professional Staff, Civil Service, and Pupils lists the following performance responsibilities:

a. Maintains close contact with all departments and schools in planning and anticipating personnel needs;

b. Administration and supervision of the District's educational and referral program for students with handicapping conditions;

c. Directs and coordinates programs involving support personnel who provide special services, such as Registered Nurses, Social Workers, Psychologists, Guidance Counselors, etc.;

d. Plans, directs, coordinates and participates in the recruitment of teachers, and administrators for all programs and departments;

e. Screens and processes application of professional personnel;

f. Plans, directs, coordinates and participates (when appropriate) in the selection of staff;

g. Develops and distributes notices of vacancies;

h. Acts as liaison with colleges, universities, teacher placement offices and other agencies in connection with personnel matters;

i. Process all professional personnel evaluations and assembles information for the Superintendent as to continued employment status, tenure certification or other appropriate status;

j. Process recommendations for termination of employees, assembling substantiating information for dismissal of employees and arranging any conference and hearings;

k. Administers the contract and salary schedule for all professional personnel, and assists in developing and recommending salary policy and structure;

l. Coordinates and interprets the evaluation program of professional personnel, and assists in the development of regulation for the just administration of the professional advancement program;

m. Maintains an up-to-date application file of prospective candidates for all teaching, administrative and supervisory positions;

n. Develop and maintains a system for personnel records for employees, in order to prove a comprehensive, efficient, accurate and current record of all matters pertinent to employment, transfer, tenure, retirement, leave, promotion, and certification;

o. Prepares and maintains statistical information on all personnel, and submits the necessary statistical reports to the New York State Department of Education;

p. Receives and reviews requests for transfers in accordance with transfer regulations and the needs of the district;

q. Screens and selects qualified substitute teachers and maintains a register of substitutes;

r. Supervises and evaluates all administrative, teacher and support staff in the pupil personnel area where appropriate;

s. Provide innovative and informational professional development programs to pupil personnel staff;

t. Assists in preparation of the annual budget in those areas related to special education and all other Pupil Personnel fields;

u. Communicates with parents regarding proper interpretation of state and district regulations regarding special education;

v. Maintains a comprehensive understanding of current trends of statutes on special education at the state and federal levels;

w. Keeps the Superintendent, administration, staff and school community informed regarding special education regulations and the functions of Pupil Personnel Services;

x. Coordinates the conducting of the District's census.

Exhibit D to Def's Aff. in Support of Mot. to Dismiss.

Under New York Education law section 2510(1), "[i]f the board of education abolishes an office or position and creates another office or position for the performance of duties *similar* to those performed in the office or position abolished, the person filling such office or position at the time of its abolishment shall be appointed to the office

or position thus created." N.Y.Educ.Law § 2510(1) (McKinney 1981) (emphasis added). "The test of whether the duties of the two positions are in fact similar is whether more than 50% of the functions to be performed by the incumbent of the new position are those which were performed by the [plaintiff] in [the] old position." *Greenspan v. Dutchess County Bd. of Cooperative Education.*, 96 A.D.2d 1028, 466 N.Y.S.2d 430, 433 (2d Dep't 1983) (citing *Matter of Coates v. Ambach*, 52 A.D.2d 261, 383 N.Y.S.2d 672, *aff'd*, 42 N.Y.2d 846, 397 N.Y.S.2d 630, 366 N.E.2d 290 (1977)).

Comparing the job descriptions, it is apparent that there are some similarities between the two jobs. For example, as indicated in Table 1 below, nine out of the twenty-four listed performance responsibilities for the Assistant Superintendent for Personnel position are materially identical to the abolished position of Director of Pupil Personnel Services.

TABLE 1

| DPPS | = | ASP |
|---|---|---|
| 2 | | b |
| 5 | | c |
| 7 | | r |
| 8 | | s |
| 10 | | t |
| 11 | | u |
| 13 | | v |
| 14 | | w |
| 16 | | x |

In addition to these, item (17) for the Assistant Superintendent of Personnel position and item (e) for the DPPS position are similar, although not cast in the same language.

On the basis of a simple comparison of the performance responsibilities, it is apparent that about one third of the duties of the new position of Assistant Superintendent of Personnel are duties previously performed by plaintiff in his position as Director of Pupil Personnel Services. While this comparison alone is insufficient to determine that defendant violated section 2510(1) by not offering plaintiff the new position, it is sufficient for this Court to find that defendant School Board could have known that "there was [a] substantial *possibility* that plaintiff might possess a substantive right under Education Law § 2510(1) to occupy the new position." *DeSimone*, 612 F.Supp. at 1571 (emphasis in original). Accordingly, this Court holds that, on the facts of this case, plaintiff was deprived of a property right without procedural due process of law. In short, plaintiff was entitled to a hearing on the issue of "similarity" prior to the decision not to offer plaintiff the newly created position of Assistant Superintendent of Personnel. For this failure to grant a hearing, plaintiff is entitled to at least nominal damages.

CONCLUSION

Because the record in this case is insufficient to determine whether in the event that such a pre-termination hearing had been held plaintiff would have received a favorable decision, a trial is necessary to determine the issue of similarity between the two jobs under § 2510(1), and whether plaintiff suffered actual injury stemming from the denial of due process as opposed to the deprivation itself. For the reasons set forth above, defendant's motion to dismiss must be, and the same hereby is, denied.

SO ORDERED.