OPINION
CARROLL J. DECOTEAU, Associate Justice.

Procedural History

Cerafin John Morales (Morales) was charged with a violation of Title III CCOJ § 215 (simple assault) on January 29, 1998. A jury trial was held on September 2, 1998, the Honorable Georgia Dupuis, presiding. The jury returned a verdict which was announced by Judge Dupuis as “not guilty”. Later that same day Tribal Prosecutor Chris Manydeeds filed three separate motions: one for mistrial (based upon the mistaken announcement of the judge that the verdict (4 to 2 for “not guilty”} resulted in “not guilty”), one for retrial assuming the grant of the motion for mistrial, and one for the appointment of a special prosecutor to be assigned for retrial, based upon the fact that Morales was a member of the Tribal Executive Board and sat on the Law and Justice Committee which, according to the Prosecutor, effectively controls the judiciary. All three motions were granted by Judge Dupuis. On September 4, 1998, an addendum to his Motion for Mistrial, based upon alleged juror misconduct, was also filed by the Prosecutor and was granted by Judge Barry Bighorn on the same day. The defendant appealed from the grant of these motions on September 4, 1998, citing a denial of due process and equal protection pursuant to 25 USC § 1302(8) (commonly referred to as the “Indian Civil Rights Act”.) Defendant further contends that the grant of the “retrial” motion subjects him to double jeopardy.
Brief Factual Background
On January 10, 1998, Morales and various members of his family were celebrating the marriage of his sister at the V.F.W. Club in Wolf Point, MT. According to the complaint, Morales walked up to the bar where William (Bill) White Head and Randy Nordwick were sitting. After White Head introduced Morales to Nord-wick, Morales is alleged to have walked over to Nordwick and, without comment or provocation, assaulted Nordwick, knocking him to the floor. According to affidavits filed with a Motion to Dismiss, members of Morales’ party stated that one or more of them were with Morales the entire evening and that no such assault took place.
After several delays occasioned by motions to continue by both sides, Morales was tried by a jury on September 2, 1998. The jury verdict form that was delivered to the Judge reflected a tally of four jurors in favor of “not guilty”, and two jurors in favor of “guilty”. The record is not clear as to whether Judge Dupuis misinterpreted the form [1] when she declared the verdict as “not guilty”. The Court did not poll the jury, nor did the Tribal Prosecutor move the court to do so. Thus, the jury was dismissed without objection of either party and without any indication from the jury panel that the verdict was anything other than “not guilty”. Later the same day, realizing the possibility of an error, the Prosecutor immediately filed motions for mistrial, retrial, and for a special pros *192 ecutor. Judge Dupuis granted the motions without notice to defendant and without benefit of a hearing.
Issues Presented
Morales contends that the Tribal Court violated due process rights afforded him under the Indian Civil Rights Act (25 USC § 1302(8)), in that the court improperly declared a mistrial based on the ex parte motion of the Prosecutor. He further contends that his equal protection rights under § 1302(8) were violated by the Court in that the Court failed to adhere to its own Rules of Civil Procedure, Rule 1-15[2]. Finally, the defendant urges that the Tribal Court’s grant of the mistrial motion “violates ... statutory and constitutional prohibitions (regarding) double jeopardy.”
We agree that the defendant’s rights to due process of law were violated and thus, we find it unnecessary to reach the remaining issues raised. Accordingly, our discussion is limited to the singular issue of due process.
Discussion
Due process of law is a broad concept and involves many aspects of an individual’s rights, both procedurally and substantively. The Fourteenth Amendment to the United States constitution provides that no State shall “deprive any person of life, liberty, or property, without due process of law.” The Indian Civil Rights Act of 1968 contains a similar provision limiting Tribal governments: “No Indian Tribe in exercising powers of self-government shall ... deny to any person within its jurisdiction the equal protection of its laws or deprive any person of liberty, or property without due process of law.” 25 USC § 1302(8). Federal case law varies as to whether the “federal due process rights” are applicable to Indian Tribes. Groundhog v. Keeler (1971, C.A.10 Okla.) 442 F.2d 674 holds that 25 USCS § 1302 does not make applicable to Indian tribes the due process clause of the Fifth Amendment, equal protection and due process clauses of Fourteenth Amendment and provisions of Fifteenth Amendment. In accord is Johnson v. Frederick (1979, D.C.N.D.) 467 F.Supp. 956 which holds that “powers of tribal government are constrained only by provisions of Indian Civil Rights Act (25 USC § 1302) and not by parallel provisions of (US) Constitution”. However, Red Fox v. Red Fox, 564 F.2d 361 (9th cir.1977) holds that due process under In-dian Civil Rights Act is same as that in the federal constitution. Our holding today does not attempt to address this conflict, but rather, will focus solely on our opinion of the requirements of due process under the Indian Civil Rights Act.
First and foremost, we believe that basic principles of fairness impose the duty on our Tribal Court Judges to protect the rights and privileges of all persons appearing in their courts, no matter what the nature of the crime or who the person may be. At a minimum, this duty requires that all parties have “notice” when their liberty or property is at risk and, an opportunity to make their own claims or defense. Thus, we agree with the principle set forth in Twining v. New Jersey, 211 U.S. 78, 111, 29 S.Ct. 14, 53 L.Ed. 97 (1908) which holds that notice and a reasonable opportunity to be heard to present one’s claim or defense have been fundamental conditions prescribed in all systems of law by civilized countries. We also subscribe to the notion that, “Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation, of life, liberty, or property,” Carey v. Piphus, 435 *193 U.S. 247, 259, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). In essence, the “concept of due process exists to protect individuals against arbitrary action by their government”. Berry v. Arapahoe & Shoshone Tribes (1976, D.C.Wyo.) 420 F.Supp. 934.
This Court, in previously addressing the issue of ex parte orders, has stated, “... in obtaining an ex parte order to disqualify a judge under I CCOJ § 307 without notice to the other party and the tribal court’s failure to make specific findings and give the Tribes an opportunity to be heard, was error, and violated the code of ethics, and denied basic due process of law, and equal protection under the law to the Tribes.” Fort Peck Tribes v. Azure, FPCOA # 081, p. 5 (1989). In Azure we quoted from the Fort Peck Tribal Court Code of Judicial Conduct and find it equally compelling here:
“A judge should accord to every person who is legally interested in a proceeding, or his lawyer or advocate, the full right to be heard under the code, the Indian Civil Rights Act, and any other relevant source of law. Except as authorized by law, the judge shall not initiate nor accept any written or oral communication concerning a pending case, either from a party to the case or from any other person, without either the presence or agreement of all parties. The judge shall not meet with any party to a case, or accept any communication from a party without either the agreement or presence of all other parties.” Canon 3 A(4)
Recently we held that the Tribal Court violated principles of due process of law when it dismissed the third party defendant United States on it’s own Motion, without giving the defendants, who had previously obtained Tribal Court permission to file a third party complaint against the United States, an opportunity to be heard. Jackson v. Grainger, FPCOA # 287 (2000). In our opinion, ex parte communications and orders are the natural enemies of the principles of due process and should be used only when the circumstances warrant and such communications and orders are expressly authorized. In the case before us, the circumstances did not warrant, nor were ex parte communications expressly authorized.
Conclusion
We find that the granting of the motions by Judge Dupuis, were a violation of defendant’s right to due process of law. It is also obvious that Judge Dupuis did not acquit the defendant on her own volition, but rather, misinterpreted the jury form, and that the Prosecutor’s failure to assure that the jury was properly polled contributed to the error. This combined with the jurors failure to dissent or object to the'verdict announced by Judge Dupuis, leaves this Court with no alternative but to reinstate the original “announced” verdict of not guilty, rendering all other issues related to this appeal moot.
Accordingly, the order of the Tribal Court granting a mistrial is reversed.
CONCUR: GARY P. SULLIVAN, Chief Justice, and GARY M. BEAUDRY, Associate Justice.

. Title VI CCOJ2000 507(k) provides: (k) After deliberation in private, the jury in criminal cases shall return to the judge in open court a verdict of “Guilty” or “Not Guilty” with respect to each defendant. A verdict in criminal cases shall be rendered by a five-sixths (5/6) majority of the jury.

. We note that defendant's invocation of the Rules of Civil Procedure in a criminal case is inappropriate. Defendant does not cite and we know of no authority which would require our Tribal Court to apply the rules of Civil Procedure in a criminal context.