ORDER GRANTING WRIT OF HABEAS CORPUS AND FOR RELEASE OF PRISONER

BACKGROUND

¶ 1 On May 27, 2016, Joni Ackerman filed a Petition for Involuntary Commitment of her son, Appellant Charles Acker-man (“Ackerman”), as an Alcoholic and/or Chemically Dependent Person pursuant to 11 CCOJ § 201 et al. In support of her Petition, she alleged Appellant Ackerman was addicted to various drugs, including methamphetamines and alcohol. She stated Ackerman had lost custody of his son, lost several jobs, and sabotaged relationships with family and friends. Ms. Acker-man submitted letters from family members as well as a discharge note from Rimrock Foundation Treatment Center, documenting an unplanned discharge and recommending Charles Ackerman complete inpatient treatment and follow all recommendations, to support her allegations.
¶ 2 On May 27, 2016, after reviewing the Petition, the tribal court signed a Warrant to Apprehend Charles Ackerman for the Involuntary Commitment. Ackerman was detained June 1, 2016 and held in the Fort Peck Tribal Jail until June 2,2016 when he was brought to Court for a hearing pursuant to 11 CCOJ § 205.
*393 ¶ 3 At the hearing, Lafon Copenhavor, Prosecutor, was present on behalf of the Tribe, Petitioner, Joni Ackerman was present, and Appellant Ackerman appeared from detention. Joni Ackerman provided testimony in support of her Petition. Ms. Ackerman stated that Appellant Ackerman was paranoid, lost weight, was not taking care of his health, threatened family members with bodily harm, and stole from family members. Prosecutor Copenhaver informed the Court there was a bed available for him in a residential treatment facility and recommended that he be remanded to jail pending his evaluation and Tuberculosis Test. The tribal court then asked Charles Ackerman if he “agreed or disagreed.” Charles stated that he disagreed with the Court Order, but was willing to go to treatment. Based on this information the tribal court found the Tribe had met its burden to show by clear and convincing evidence that Appellant Ackerman was an alcohol and/or drug or chemically dependent person and a danger to himself and/or others pursuant to 11 CCOJ § 103.
¶ 4 The lower court judge issued a Temporary Commitment Order, remanding Appellant Ackerman to the Fort Peck Adult Correction Facility pending his hearing on June 10,2016. The tribal court also issued an Evaluation Order, requiring Appellant Ackerman to be transported to the Spotted Bull Treatment Center to obtain a chemical dependency evaluation.
¶ 5 On June 10, 2016, the Court held a Review Hearing. Prosecutor Copenhaver and Petitioner Joni Ackerman appeared at the hearing and Appellant Ackerman appeared from detention. Appellant Acker-man obtained a chemical dependency evaluation that day at Spotted Bull Treatment Center and the evaluation recommended Level 3.5 Inpatient Treatment. The Court heard testimony from Prosecutor Copen-haver that Appellant Ackerman had been accepted into a residential facility with an intended admission in two weeks, but he still had to have a Tuberculosis test administered. The evaluation and recommendations were provided to the Tribal Court along with a letter from The Life House Residential Treatment facility, stating that the treatment center required a physical examination from a medical doctor and a Tuberculosis test prior to admission. The Life House Residential Treatment facility also advised the Tribal Court that Volunteers of America were available to transport Appellant Ackerman from Miles City, MT to Sheridan, WY.
¶ 6 The tribal court inquired about the possibility of Appellant Ackerman’s release from detention pending admission to residential treatment, but Prosecutor Copen-haver objected based on her statement that Appellant Ackerman was under investigation in a separate criminal matter. Prosecutor Copenhaver stated detention was the best place for him until he could be transported directly to the treatment facility. Appellant Ackerman denied he was a flight risk and expressed willingness to go to treatment. Prosecutor Copenhaver responded that Appellant Ackerman had previously been admitted to a treatment center from which he left prior to completion and that he had ties off the reservation creating a risk of flight. She stated that the Tuberculosis test had already been scheduled for the next week and then he could be transported to treatment. Based on this information, the tribal court again found Appellant Ackerman to be alcohol, drug and/or chemically dependent and a danger to himself and/or others and remanded Appellant Ackerman to custody until he was transported to treatment. The tribal court also ordered that Appellant Ackerman attend and complete inpatient treatment and report back *394 to the jail when completed or he would be charged with Escape.
¶ 7 On June 15, 2016 Fort Peck Tribes Public Defender Terry L. Boyd filed a Writ of Habeas Corpus on behalf of Appellant Ackerman, alleging that Appellant Ackerman was being detained illegally on the Involuntary Commitment Proceeding because the Tribal Code only authorized detention in a detoxification center or treatment center and there was no corroborating evidence to meet the standard that Appellant Ackerman is dangerous.
¶ 8 The Court held a hearing on June 20, 2016 on the Writ of Habeas Corpus. The lower court judge hearing the matter issued an Order on June 22, 2016 denying the writ of habeas corpus based on her finding that Appellant Ackerman was afforded due process in the Involuntary Commitment proceedings and Ordered that he continue to be held pending transport to treatment.
¶ 9 On June 22, 2016, the tribal court issued an Order to Release from Custody and an Order to Transport, directing the Keeper of the Agency Jail to release Ack-erman from custody on June 28, 2016 to the Spotted Bull case manager for transport to treatment in Sheridan, Wyoming. The Transport Order stated that Charles Ackerman shall be transported back to the Adult Corrections Jail upon completion of treatment.
¶ 10 On June 22, 2016 Appellant filed a Notice of Appeal with this Court. Appellant argues his right to due process was violated when he was detained in the Fort Peck Adult Correction Facility on an Involuntary Commitment, pending transport to a residential facility. Appellant further argues his right to due process was violated by the Transport Order issued by the tribal court, requiring Defendant to be transported back to the Adult Correction Facility upon completion of treatment. Lastly, Appellant argues that the Tribal Court’s failure to order a medical evaluation of the Appellant prior to his hearing, pursuant to 11 CCOJ § 205 was a violation of his rights to due process.

STATEMENT OF JURISDICTION

¶ 11 The Fort Peck Appellate Court has jurisdiction to review the final orders from the Fort Peck Tribal Court. II CCOJ § 202.

ISSUE

¶ 12 The Appellant raises the following issue on appeal:
1. Whether Appellant was detained illegally in violation of his right to due process during an Involuntary Commitment proceeding when the Court ordered him remanded to the Fort Peck Correctional Facility pending transportation to treatment and upon return from completing his treatment program?

STANDARD OF REVIEW

¶ 13 The Court of Appeals shall review de novo all determinations of the Tribal Court on matters of law, but shall not set aside any factual determinations of the Tribal Court if such determinations are supported by substantial evidence. II CCOJ § 202. The issue of the legality of Appellant’s detention is a legal issue in which the Fort Peck Appellate Court will review de novo.

DISCUSSION

¶ 14 This Court has a long experience with due process of law. In Fort Peck Tribes v. John Morales, 2 Am. Tribal Law 189 (2000), this Court said “due process of law is a broad concept involving many aspects of an individual’s rights” including *395 both procedural and substantive rights. The Morales Court established this Court’s approach to due process issues when it stated:
“First and foremost, we believe that basic principles of fairness impose the duty-on our Tribal Court Judges to protect the rights and privileges of all persons appearing in their courts, no matter what the nature of the crime or who the person may be. At a minimum, this duty requires that all parties have ‘notice’ when their liberty or property is at risk and an opportunity to make their own claims or defense. Thus, we agree with the principle set forth in Twining v. New Jersey, 211 U.S. 78, 111, 29 S.Ct. 14, 53 L.Ed. 97 (1908) which holds that notice and a reasonable opportunity to be heard to present one’s claim or defense have been fundamental conditions prescribed in all systems of law by civilized countries. We also subscribe to the notion that, ‘Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation, of life, liberty, or property,’ Carey v. Piphus, 435 U.S. 247, 259, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978). In essence, the ‘concept of due process exists to protect individuals against arbitrary action by their government’. Berry v. Arapahoe & Shoshone Tribes (1976, D.C.Wyo.) 420 F.Supp. 934.”
Morales, 2 Am. Tribal Law at 192-93.
¶ 15 In order to determine if Appellant’s detention violates his procedural due process rights, it is necessary to determine the source of and the procedures used to detain an individual facing involuntary commitment under the laws of the Fort Peck Tribes. The Fort Peck Tribal Code, Title 11, Chapter 2 outlines the procedures for the involuntary commitment of alcoholic and drug or chemically dependent persons. The chapter is to be construed to provide the “least restrictive treatment or detention available which will serve the needs of drug or chemically dependent or alcoholic persons.” 11 CCOJ § 202.
¶ 16 The procedures outlined in the Tribal Code do not authorize either pre nor post-hearing detention of an individual in a correctional facility. The Code states that detention of alcoholic or drug or chemical dependent persons prior to hearing is limited to emergency situation where the person is found to be extraordinarily dangerous. 11 CCOJ § 207. The Code requires that an individual taken into custody must be detained at a detention center or treatment facility on the reservation and must have a hearing within 48 hours of being arrested. 11 CCOJ § 205(a). This Section also requires the Court to order an examination of the respondent by a physician or other health care professional prior to the hearing. At the time of the hearing, the Respondent shall be advised of his rights, including the right to retain counsel at his own expense, the right to be present, and the right to testify, present documentary evidence, call witnesses, and ask questions of all witnesses. 11 CCOJ § 205(a)(b)(c).
¶ 17 At the hearing both the Tribe and Respondent have the ability to present evidence and call witnesses on their behalf. After the hearing, if the Court finds the Tribe has met its burden to establish by clear and convincing evidence that the respondent is an alcoholic or drug/chemically dependent person and dangerous, it may order detention as follows:
(a) In a detoxification center for a maximum of thirty (31) days if the person is an alcoholic; and
(b) In a treatment facility for a maximum of six (6) months for a drug or chemically dependent person.
11 CCOJ § 206.
¶ 18 Section 206 does not authorize the Tribal Court to detain the respondent in a *396 correctional facility established to house inmates, as occurred in this case. A “detoxification center” is defined as, “any center exclusively for the treatment of alcoholic persons, whether on or off the reservation.” 11 CCOJ § 103(d) [emphasis added] Although, it is the policy of the Fort Peck Adult Correctional Facility to provide inmates access to detoxification services and substance abuse treatment pursuant to the BIA Corrections Handbook, this facility does not exclusively provide for the treatment of alcoholic persons. BIA Corrections Handbook, C2-42 BIA ADF Guidelines 4C-14; 4D-05. Rather, the main purpose of the Fort Peck Adult Correctional Facility is to house inmates that have been charged or convicted of crimes. The secondary purpose of this facility is to facilitate an inmate’s rehabilitation, including substance abuse treatment.
¶ 19 Alternatively, if the Tribal Court finds the Tribe has not met its burden to prove the respondent is an alcohol or drug/chemically dependent person and dangerous, the Tribal Court may order additional examination and an additional hearing, to be held within five (5) days. Under this scenario, the Tribal Court may order the continued detention of a respondent pending an additional hearing if there is probable cause that the respondent is alcoholic or drug/chemical dependent and dangerous. Otherwise, the Court must immediately release the respondent and transport home. 11 CCOJ § 206. In the case at hand, the Court found the Tribe had met its burden by clear and convincing evidence that Respondent was alcohol, and/or drug and chemical dependent, and therefore the second scenario does not apply-
¶ 20 Lastly, 11 CCOJ § 207, allows for a law enforcement officer or a licensed physician to take a person into custody if it is determined, following investigation, that there is probable cause the individual is an alcoholic and/or drug or chemically dependent and is extraordinarily dangerous. The detention authorized under this section is also limited to detention in a detoxification center or treatment facility. Again, this Section does not apply to the case at hand.
¶21 In the present case, Respondent was detained in a correctional facility from June 1, 2016 until June 23, 2016 due to his involuntary commitment as an alcoholic and/or drug or chemically dependent person. Nothing in the record reflects that the requirements for emergency detention were satisfied to justify any pre-hearing detention of Appellant Ackerman in either a detoxification center or appropriate treatment or health care facility in accordance with statutory requirements. Appellant Ackerman was further ordered to be detained upon his return from the treatment facility, which is anticipated to occur on August 22, 2016. Neither type of pre and post-treatment detention in a correctional facility is authorized by the Tribal Code for involuntary commitment proceedings for alcoholic and/or drug or chemically dependent individuals.

CONCLUSION

¶ 22 For the aforementioned reasons this Court finds that the Fort Peck Tribal Court did violate the procedural due process rights of Charles Ackerman when it ordered that he remain detained in a correctional facility on his involuntary commitment proceeding pending transportation to treatment and upon completion of the treatment program.

ORDER

¶23 This Court hereby reverses the Tribal Court’s Order Denying the Writ of Habeas Corpus, grants the Writ, and Or *397 der the immediate release of Charles Ack-erman from the custody of the Fort Peck Tribes.
¶ 24 The Keeper of the Fort Peck Adult Correctional Facility shall not take Charles Ackerman into custody upon his release from any treatment facility where he may currently be residing and shall immediately release Charles Ackerman from custody if he is in the Fort Peck Adult Correctional Facility.
¶25 The Tribal Court is directed to strictly comply with all substantive and procedural requirements pertaining to involuntary commitment matters in accordance with the Tribal Code to ensure due process standards are met prior to detaining individuals in a detoxification center, treatment facility or health care facility.