ORDER REVERSING WITH REMAND

INTRODUCTION

¶ 1 Marty Lone Bear appeals the May 5, 2016 Commitment Order of the Fort Peck Tribal Court and the lower court’s failure to act upon his May 10, 2016 Motion for Stay of Judgment Pending Appeal. This Court Grants Appellant’s appeal and stays the judgment of the lower court.

FACTUAL AND PROCEDURAL HISTORY

¶ 2 On April 19, 2016 Sharon R. Yellow Owl filed a Petition for Involuntary Commitment of Alcoholic and Drug or Chemically Dependent Person. In her Petition, Ms. Yellow Owl sought the involuntary commitment of Appellant Marty Lone Bear as provided for in 11 CCOJ Ch. 2 et seq,
¶ 3 In support of her Petition, Ms. Yellow Owl alleged Mr. Lone Bear physically abused her, drank whiskey against his medical provider’s directives, had recently *399 been treated for alcohol dependency in South Dakota, and had developed an alcohol dependence which impacted both Ms. Yellow Owl and others negatively. Ms. Yellow Owl provided no evidence or testimony supporting her Petition other than her own feelings, observations, and beliefs.
¶4 On April 30, 2016 the lower court judge signed a Warrant to Apprehend authorizing the detention of Mr. Lone Bear based on the application for Involuntary Commitment. Mr. Lone Bear was detained by law enforcement that same day and held in the Fort Peck Tribal Jail.
¶ 5 On May 2, 2016 the lower court judge held a hearing to consider the allegations in Ms. Yellow Owl’s Petition. In attendance were Tribal Prosecutor LaFon Copenhaver, Mr. Lone Bear, and Ms. Yellow Owl. Mr. Lone Bear appeared via video link from Tribal Jail. At the hearing the lower court judge advised Mr. Lone Bear of his rights. During the proceedings, Mr. Lone Bear advised the lower court that he no longer wished to remain living in Ms. Yellow Owl’s home. Mr. Lone Bear also asked for counsel. The lower court judge acknowledged Mr. Lone Bear’s request for counsel but continued with the hearing including asking additional questions of Ms. Yellow Owl and allowing inquiries into possible domestic violence. The lower court judge then made a probable cause finding that the court should proceed with the petition, scheduled another hearing for May 9, 2016 in order for Mr. Lone Bear to obtain legal counsel and gather additional information, and asked for recommendations from the tribal prosecutor.
¶ 6 At the conclusion of the May 2, 2016 hearing, the lower court judge ordered from the bench that Mr. Lone Bear be released from tribal jail on the condition that he refrain from using alcohol or drugs, violate no law, appear as summoned, remain with the boundaries of the Fort Peck Indian Reservation, submit to random alcohol/drug testing, avoid all establishments serving alcohol, undergo drug and alcohol evaluation at The Spotted Bull Recovery Resource Center, submit his evaluation results, and continue to reside at Ms. Yellow Owl’s residence.
¶7 The lower court judge issued an Evaluation Order on May 2, 2016, In her Order, she determined that Mr. Lone Bear had “used alcohol and/or drugs excessively and [was] in need of alcohol and/or chemical abuse treatment, or other treatment necessary for recovery.” The lower court judge next ordered Mr. Lone Bear to the Spotted Bull Treatment Center to obtain a professional evaluation of this alcohol and chemical abuse problem. Following the evaluation, Spotted Bull Treatment Center was ordered to promptly refer Mr. Lone Bear back to Tribal Court for final adjudication. Finally, the lower court judge ordered Mr. Lone Bear to refrain from alcohol and drug use and to comply with all of Spotted Bull Treatment Center’s rules and regulations and set the matter for a hearing on May 9,2016.
¶ 8 On May 6, 2016 the lower court judge issued her Commitment Order from the May 2 hearing. In her Order, she deemed Mr, Lone Bear an alcohol, drug, and/or chemically dependent person within the meaning of 11 CCOJ § 103 and § 203 and a danger to himself and/or others. She ordered Mr. Lone Bear released, ordered him to immediately obtain a drug and alcohol evaluation, obtain a physical, violate no law, refrain from using alcohol or drugs, refrain from associating with individuals under the influence of alcohol or drugs, submit to random drug and alcohol testing, and visit the Tribal Probation Office weekly.
¶ 9 On May 9, 2016 Spotted Bull Recovery Resource Center Licensed Addiction Counselor Arnold Douglas reported that *400 Mr. Lone Bear had attended his One to One appointment on May 9, 2016. Upon review, Douglas indicated he was reopening Mr. Lone Bear’s case and assigning him a level 3.6 status, care for which would begin on Mondays and Wednesdays after treatment.
¶ 10 On May 9, 2016 Fort Peck Tribes Public Defender Terry L. Boyd entered a Notice of Appearance representing Mr. Lone Bear. Within the record there is mention of a review hearing at which Boyd appeared representing Mr. Lone Bear. Nothing in the record reflects whether this review hearing occurred or what happened at the hearing. Given that the point of concern on appeal is with the initial hearing this defect in the record is not critical to our decision.
¶ 11 On May 10, 2016 Boyd filed a Notice of Appeal with this Court. Boyd argues Mr. Lone Bear was denied counsel, right to due process, and right to confront individuals testifying against him during the May 2, 2016 hearing. Boyd further alleges Mr. Lone Bear’s rights were violated when he was denied the request for an opportunity to obtain counsel and also when the lower court judge found him a danger to himself and others based solely upon the testimony of Ms. Yellow Owl. Boyd additionally argues Mr. Lone Bear’s due process rights were violated when the lower court judge failed to continue the hearing to a future time after counsel had been retained. Finally, Boyd argues a violation of the Indian Civil Rights Act occurred when the lower court judge failed to take any action on his May 10, 2016 Motion for Stay of Judgment Pending Appeal.

ISSUES

¶ 12 The Appellant raises the following issues on appeal:
1. Was it a violation of Marty Lone Bear’s due process rights for the Fort Peck Tribal Court to fail to stop the initial hearing after Lone Bear requested counsel to aid in his defense?
2. Was it a violation of Marty Lone Bear’s due process rights for the Fort Peck Tribal Court to deny him or his chosen counsel the opportunity to confront Sharon R. Yellow Owl?
3. Was it a violation of Marty Lone Bear’s due process rights for the Fort Peck Tribal Court to find him a danger to himself and others based solely on Sharon R. Yellow Owl’s testimony?
4. Were Marty Lone Bear’s due process rights violated when the Fort Peck Tribal Court failed to take any action on his May 10, 2016 Motion for Stay of Judgment Pending Appeal?

JURISDICTION

¶ 13 The Appellate Court’s jurisdiction extends to all appeals from final orders and judgments of the Tribal Court, appeals of administrative decisions where a provision of the Code authorizes jurisdiction, and final decisions of the Tribal Alcohol Licensing and Regulation Commission. 2 CCOJ § 202. Hawk v. Reum, FPCOA No. 43 (1988).

STANDARD OF REVIEW

¶ 14 Here, Appellant’s issues all stem from alleged violations of his procedural due process rights. He argues such violations were clear errors of law. This Court finds persuasive the position that by definition a court abuses its discretion when it makes an error of law. Koon v. U.S., 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). In cases such as the one at hand, we review for legal error using the de novo standard. 2 CCOJ § 202. Using a de novo standard, this *401 Court will approach a matter as if it is independently review the legal issue for the very first time. No deference will be afforded the prior decision of a lower court.

DISCUSSION

¶ 15 This Court has a long experience with due process of law. In Fort Peck Tribes v. John Morales, 2 Am. Tribal Law 189 (2000), this Court said “due process of law is a broad concept involving many aspects of an individual’s rights” including both procedural and substantive rights. As also discussed in Morales, there is case law conflict regarding whether due process under the Indian Civil Rights Act (25 U.S.C. § 1301 et seq.), which applies to Indian tribes, is the same as due process under the federal constitution. Id. at ¶ 6.
¶ 16 The Morales Court established how due process would be analyzed:
“First and foremost, we believe that basic principles of fairness impose the duty on our Tribal Court Judges to protect the rights and privileges of all persons appearing in their courts, no matter what the nature of the crime or who the person may be. At a minimum, this duty requires that all parties have ‘notice’ when their liberty or property is at risk and an opportunity to make their own claims or defense. Thus, we agree with the principle set forth in Twining v. New Jersey, 211 U.S. 78, 111 [29 S.Ct. 14, 53 L.Ed. 97] (1908) which holds that notice and a reasonable opportunity to be heard to present one’s claim or defense have been fundamental conditions prescribed in all systems of law by civilized countries. We also subscribe to the notion that, ‘Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation, of life, liberty, or property,’ Carey v. Piphus, 435 U.S. 247, 259 [98 S.Ct. 1042, 55 L.Ed.2d 252] (1978). In essence, the ‘concept of due process exists to protect individuals against arbitrary action by their government’. Berry v. Arapahoe & Shoshone Tribes (1976, D.C.Wyo.) 420 F.Supp. 934.”
Morales at ¶ 7.

ISSUE ONE

¶ 17 The first issue at hand is whether it was a violation of Marty Lone Bear’s due process rights for the Fort Peck Tribal Court to fail to stop the initial hearing after Mr. Lone Bear requested counsel to aid in his defense.
¶ 18 The involuntary commitment process for alcohol and drug or chemical dependent persons is governed by 11 CCOJ Ch. 2 et seq. The tribal code outlines the process by which a person suffering from alcohol and drug or chemical dependency may be involuntarily committed to a detoxification center or other appropriate treatment facility.
¶ 19 In order for a person to receive due process of law during the involuntary commitment process, each step of the process must be fully followed. Where the stated process is not followed and substantially adhered to, error of law occurs. The lower court must adhere to the procedural requirement of the tribal code in order to satisfy fundamental due process requirements.
¶20 Section 205 of the Tribal Code states that:
“After receiving an application, the Court shall schedule a hearing to be held immediately if possible and in all cases
(a) Within 48 hours of the time of detention if the respondent is being detained at a detention center or *402 treatment facility on the Reservation, and
(b) Within 10 days if the respondent is not being detained or is being detained off the Reservation.
The Court shall make reasonable attempts to notify, by telephone or other means, the respondent and the respondent’s next of kin of the time and place of the hearing, and the right of the respondent
(a) To retain counsel at respondent’s expense;
(b) To be present and
(c) Testify, present documentary evidence, call witnesses and ask questions of all witnesses. Prior to the hearing, the Court shall order the examination of respondent by a physician or other health care professional. The hearing shall be held informally, and shall be closed to the public unless the respondent or his/her authorized representative requests otherwise and the Court so orders.”
11 CCOJ § 205 [emphasis added]. Although the tribal legislative body is encouraged to modify this section in order to eliminate two similarly designed subsections within this section, the intent of the statute can still be ascertained.
¶ 21 Accordingly, an individual subject to involuntary commitment for alcohol and drug or chemical dependency must be given the opportunity to retain counsel at his or her expense. This is essential to allow the accused the opportunity to mount a defense against a filed involuntary commitment application which may result in the loss of freedom if the application is granted.
¶ 22 Although the lower court judge informed Mr. Lone Bear of his rights and Mr. Lone Bear acknowledged that he had been informed of his rights, there was no inquiry by the lower court as to whether Mr. Lone Bear wished to obtain counsel prior to proceeding with the hearing. After hearing initial testimony from Ms. Yellow Owl, Mr. Lone Bear indicated he wanted legal counsel. The lower court judge acknowledged his request.
¶23 Rather than immediately stopping the proceedings and continuing them for an appropriate period so that Mr. Lone Bear might retain counsel, the lower court judge allowed questioning of Ms. Yellow Owl to continue. Respondents have a recognized right in the tribal code to retain legal counsel. Allowing further questioning and issuing orders after a request for counsel has been made violates this fundamental due process right. By taking away Mr. Lone Bear’s chance to retain counsel at that point in the proceeding he was unable to mount a defense to avoid the potential loss of liberty associated with an involuntary commitment.

ISSUE TWO

¶24 The second issue at hand is whether it was a violation of Marty Lone Bear’s due process rights for the Fort Peck Tribal Court to continue to hold his hearing and question Sharon R. Yellow Owl without allowing Mr. Lone Bear or his chosen counsel the opportunity to confront Ms. Yellow Owl in his defense.
¶ 25 As previously mentioned, 11 CCOJ Ch. 2 et seq. governs the involuntary commitment process for alcohol and drug or chemically dependent persons. Section 205 defines the rights afforded to individuals accused of alcohol and drug or chemical dependency who face involuntary commitment. One right afforded such individuals is found in subsection (c). Subsection (c) states that individuals facing involuntary commitment are entitled to: “Testify, present documentary evidence, call wit *403 nesses and ask questions of all witnesses.” 11 CCOJ § 205(c).
¶26 Therefore, an individual facing involuntary commitment must be given the opportunity to testify, present documentary evidence, call witnesses, and ask questions of all witnesses. The individual may do so for himself or herself or retain counsel to do so on his or her behalf.
¶ 27 Here, the lower court judge erred by denying Mr. Lone Bear the opportunity to present documentary evidence, call witnesses and ask questions of all witnesses in his defense. Although she asked Mr. Lone Bear if he had any questions for Ms. Yellow Owl, she did so after he had asked for counsel to assist him. This should have indicated to the lower court that he wanted assistance with the proceedings. This was a further violation of Mr. Lone Bear’s due process rights because it removed from him the opportunity to mount a defense of the loss of liberty he was to experience through involuntary commitment.

ISSUE THREE

¶ 28 The third issue is whether it was a violation of Marty Lone Bear’s due process rights for the Fort Peck Tribal Court to find him a danger to himself or others based solely on Sharon R. Yellow Owl’s testimony.
¶ 29 As it currently exists, the statutory process established for involuntary commitment for alcohol and drug or chemically dependent individuals is very specific. First, an application which conforms to the requirements of 11 CCOJ § 204 is filed with the lower court. A § 204 application can be filed by anyone and must include the name, address, and telephone number of the applicant, the respondent, and if known, the respondent’s next of kin. It must state the reason(s) why the applicant feels the respondent is alcoholic and dangerous to themselves or others, or drug or chemically dependent and dangerous to themselves or others. The application must include any supporting evidence, including affidavits or written statements from medical providers and community members, concerning the respondent’s alcoholism or drug or chemical dependence and dangerousness.
¶30 The next step in the involuntary commitment process for alcohol and drug or chemically dependent individuals is found at 11 CCOJ § 205. Section 205 requires that a hearing be held immediately if possible. In cases where an immediate hearing is not possible, it still must be held within 48 hours of the time an accused individual is detained if the individual is detained at detention center on the Reservation. In cases where the individual is not detained or is detained off the Reservation, the hearing must be held within 10 days. The CCOJ requires that before the hearing, the lower court must order the examination of the respondent by a physician or other health care professional and make reasonable attempts to notify the respondent and his/her next of kin of the time and place of the hearing. Also prior to the hearing, the lower court must advise the respondent of his or her rights. As detailed previously, these rights include: 1) the right to retain counsel at the respondent’s expense; 2) the right to be present at the hearing; and 3) the right to testify, present documentary evidence, call witnesses and ask questions of all witnesses. The hearing is informal and closed to the public unless the respondent or his/her authorized representative requests otherwise and the lower court so orders.
¶ 31 This Court is troubled by the current process as outlined within the Code. The process fails to afford individuals *404 against whom an application for involuntary commitment for alcohol and drug or chemical dependency adequate due process. The process is difficult for the tribal justice system to apply in a manner satisfying minimal due process requirements. The absence of any type of pre-detention hearing so that the lower court might assess the adequacy of evidence prior to the detention of the accused individual can result in unjustified detention in violation of recognized civil rights. Detaining an individual in a jail facility is also problematic. The tribal code currently requires the individual be detained in a “detoxification” facility but defines such facility so narrowly that the tribal jail does not qualify. The procedural timeline outlined in the tribal code may be problematic depending on the recommendation of any treatment facility. For a person accused of being an alcoholic person, as was the case here, a maximum 31-day detention is allowed. If an accused individual cannot be placed into a treatment facility on the day of his or her initial detention, it is possible that his or her initial detention and treatment will exceed the 31-day maximum established by the tribal code.
¶ 32 The current statutory process fails to afford individuals against whom an application for involuntary commitment for alcohol and drug or chemical dependency adequate due process in that an individual can be detained without any probable cause type determination as to the sufficiency of the application. Although the code applies a clear and convincing standard, it does not articulate the minimal evidence needed to adequately satisfy this standard. Under the current language of the code, testimony or other evidence regarding the findings of any medical or health care professional is not mandatory at the time of any involuntary commitment hearing, yet a pre-trial medical examination is mandated by the statute. As this case demonstrates, a lower court can make a finding based solely on the testimony of the petitioner that there is clear and convincing evidence the respondent is an alcohol dependent person and dangerous. Allowing this type of determination without any independent testimony or evidence from medical or health care professionals creates substantive due process problems.
¶33 Despite these identified problems with the tribal code, this Court can only evaluate and interpret the tribal code. It cannot rewrite the tribal code. It does strongly recommend that this section of the Code be reevaluated by the Fort Peck legislative body for meaningful revision that could ensure greater clarity and compliance with both procedural and substantive due process requirements.
¶ 34 Here, Ms. Yellow Owl’s application met the bare requirements. It did not, however, feature any support or evidence. She mentioned that a doctor had given Mr. Lone Bear a year to live from “last April” but failed to provide any supportive documentation from anyone to support her claim. She claimed she received assistance from the clinic staff and even a nurse, yet did not provide any support or documents proving such statement. Ms. Yellow Owl further claimed there were individuals who had previously allowed Mr. Lone Bear to stay with them in their homes but were now denying him this privilege because of his alcohol abuse. Again, no evidence was provided by Ms. Yellow Owl and no witnesses appeared to testify to this position.
¶ 35 Ms. Yellow Owl filed her Petition on April 19, 2016 and Mr. Lone Bear was not immediately detained. Thus, his review hearing was required to be held within 10 days. He was detained 8 days later on April 30, 2016, and his review hearing occurred May 2, 2016, as required by the *405 code. Mr. Lone Bear, however, did not receive the required examination by a physician or other health care professional prior to his hearing mandated by the code. To preserve Mr. Lone Bear’s right to due process of law, the lower court should have ordered Mr. Lone Bear to undergo the required medical examination prior to holding the hearing.
¶ 36 It was abuse of discretion in violation of Mr. Lone Bear’s right to due process to continue with the hearing without first ordering Mr. Lone Bear medically examined. Had an examination occurred prior to the hearing, the lower court would have had evidence-based results to rely upon when making its decision instead of the unsupported verbal assertions of an applicant.
¶ 37 Here, Ms. Yellow Owl did not provide any evidence or support with her application and the lower court did not order medical examination prior to holding the hearing. This error robbed Mr. Lone Bear of his right to due process of law and resulted in an involuntary commitment order being issued without sufficient evidence or testimony to support a clear and convincing finding.

ISSUE FOUR

¶ 38 The fourth and final issue here at hand is whether it was a violation of Marty Lone Bear’s due process rights for the Fort Peck Tribal Court to fail to take any action on the May 10,2016 Motion for Stay of Judgment Pending Appeal Mr. Lone Bear’s counsel filed on his behalf.
¶ 39 In his May 10, 2016 Appeal to this Court, Mr. Lone Bear, through counsel, argued that his due process rights were violated again by the Fort Peck Tribal Court when it failed to respond to his May 10, 2016 Motion for Stay of Judgment Pending Appeal. After obtaining counsel, Mr. Lone Bear, citing serious and continuing due process violations that plagued his proceedings from their onset, filed this appeal and asked the Fort Peck Tribal Court to stay his involuntary commitment pending the appeal. Through counsel, Mr. Lone Bear alleged the Fort Peck Tribal Court has yet to respond, under the Fort Peck Tribal Court’s Rules of Civil Procedure, 7-3(b),
“It is incumbent upon the moving party to assure that a filed motion is set on the law and motion calendar as established by Rule 1-6. If the Court does not rule on a properly filed motion within thirty (30) days, the motion shall be deemed denied, unless this time limit is waived by the Court.”
¶ 40 As the other issues within this case easily resolve the matter here at hand, and the tribal code already addresses what happens with motions not ruled upon, this Court need not chase this void within the record further. The absence of a response from the lower court to Mr. Lone Bear’s Motion for Stay of Judgment Pending Appeal could be error, judicial oversight, or even a deficiency of the record. This Court cannot be sure.
¶ 41 What this Court is sure of, is that Mr. Lone Bear, like all parties to justice, deserves a timely legal decision which includes sufficient factual findings and identification of applicable law so that the parties and the general public can understand the position and the legal basis for the court’s decision. A well-supported legal opinion should include facts, details, and legal authorities. It should state with specificity what happened and why it happened. Justice and basic due process dictates this happen in all cases. It is particularly important in those cases where liberty and property are implicated because of the irreparable harm to the parties.

*406
CONCLUSION

¶42 For the aforementioned reasons this Court finds that the Fort Peck Tribal Court did violate the due process rights of Marty Lone Bear when it failed to halt the proceedings so that Mr. Lone Bear might retain counsel to aid in his defense. This Court also finds the Fort Peck Tribal Court violated Mr. Lone Bear’s due process rights when it failed to afford him or his counsel the opportunity to confront witnesses against him in his own defense. It further finds the Fort Peck Tribal Court violated Mr. Lone Bear’s due process rights when it found him alcohol and drug or chemically dependent as well as a danger to himself and/or others without the medical evaluation required by law. Although the record is insufficient to establish that the Fort Peck Tribal Court violated Mr. Lone Bear’s due process rights with regard to the Motion for Stay of Judgment Pending Appeal, and the other issues at hand have resolved this matter entirely, it should be noted that justice and due process require the Fort Peck Tribal Court provide adequate well-supported, reasoned, and timely responses to parties’ motions.
¶ 43 For the reasons stated above, this Court hereby reverses the lower court’s order and remands this matter back to the Fort Peck Tribal Court for redetermination using due process and procedure standards consistent with this decision and the tribal code.